Slip Op. 21-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHELTER FOREST INTERNATIONAL ACQUISITION, INC., ET AL.,** | |
| Plaintiffs, **and** | |
| **IKEA SUPPLY AG,** | **Before: Jane A. Restani, Judge** |
| Consolidated Plaintiff, **and** | **Consol. Court No. 19-00212** |
| **TARACA PACIFIC, INC. ET AL.,** | |
| Plaintiff-Intervenors, | |
| v. | |
| **UNITED STATES,** | |
| Defendant, | |
| **COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,** | |
| Defendant-Intervenor. | |

[Commerce's determination that inquiry merchandise constitutes later-developed merchandise circumventing the Orders under 19 U.S.C § 1677j(d) is remanded for reconsideration consistent with this opinion.]

Dated: February 18, 2021

<u>Daniel L. Porter</u>, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiffs Shelter Forest International Acquisition, Inc., Xuzhou Shelter Import & Export Co., Ltd., and Shandong Shelter Forest Products Co., Ltd.

Kristen S. Smith and Sarah E. Yuskaitis, Sandler, Travis & Rosenberg, PA of Washington, DC, for Consolidated Plaintiff IKEA Supply AG.

Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, DC, for Plaintiff-Intervenors Taraca Pacific, Inc., Liberty Woods International, Inc., MJB Wood Group, Inc., and Patriot Timber Products, Inc. With him on the brief were Bryan P. Cenko, Jill A. Cramer, Kristin H. Mowry and Sarah M. Wyss.

Gregory S. Menegaz, deKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff-Intervenors Shanghai Futuwood Trading Co., Ltd., Linyi Glary Plywood Co., Ltd., and Far East American, Inc. With him on the brief were J. Kevin Horgan and Alexandra H. Salzman.

Sonia M. Orfield, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant. With her on the brief was Savannah R. Maxwell, Of Counsel, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood. With him on the brief were Elizabeth S. Lee, John A. Riggins, Maureen E. Thorson, Stephanie M. Bell, and Tessa V. Capeloto.

## OPINION

Restani, Judge: This action concerns the United States Department of Commerce's ("Commerce") affirmative determination that certain merchandise constitutes later-developed merchandise and is circumventing the antidumping and countervailing duty orders on hardwood plywood from China under 19 U.S.C § 1677j(d).[1] Consolidated Plaintiffs, Shelter Forest International Acquisition Inc., et. al. ("Shelter Forest") and IKEA Supply AG., et al. ("IKEA"), and Plaintiff-Intervenors, Shanghai Futuwood Trading Co., et. al. ("Futuwood") and Taraca Pacific Inc., et. al. (the "Importer's Alliance"), challenge Commerce's affirmative

---

[1] See Certain Hardwood Plywood Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 84 Fed. Reg. 65,783 (Dep't Commerce Nov. 29, 2019) ("Final Determination"), and accompanying Issues and Decision Memorandum for the Final Determination of the Anti-Circumvention Inquiry: Certain Hardwood Plywood Products from the People's Republic of China, A-570-051, C-570-052, P.R. 240 (Dep't Commerce Nov. 22, 2019) ("I & D Memo").

anticircumvention determination.[2] The Government and Defendant-Intervenor, the Coalition for Fair Trade in Hardwood Plywood (the "Coalition"), maintain that Commerce's determination is supported by substantial evidence and in accordance with law.[3]

Before the court are six issues: (1) whether Commerce's affirmative circumvention determination that inquiry merchandise constitutes later-developed merchandise within the meaning of 19 U.S.C. § 1677j(d) is supported by substantial evidence and in accordance with law, (2) whether Commerce's refusal to review Shelter Forest's submission of new factual information was reasonable, (3) whether Commerce's application of the China-wide rate as the cash deposit rate was reasonable, (4) whether Commerce's decision to apply the results of its determination as of the signature date, not the publication date, of the initiation of the inquiry was lawful pursuant to 19 C.F.R. § 351.225(l)(2), (5) whether Commerce was required to notify the U.S. International Trade Commission ("ITC") prior to its determination, and (6) whether Commerce reasonably rejected IKEA's rebuttal case brief for containing untimely affirmative argument.

---

[2] See Pls. Shelter Forest's Br. in Supp. of their R. 56.2 Mot. for J. on the Agency R., ECF No. 50-1 (Apr. 24, 2020) ("Shelter Forest Br."); IKEA Supply AG's Mem. of P. & A. in Supp. of its R. 56.2 Mot. for J. on the Agency R., ECF No. 51 (Apr. 24, 2020) ("IKEA Br."); Mem. of P. & A. in Supp. of R. 56.2 Mot. for J. on the Agency R. by Pl-Intervenors and Consolidated Pls.' Taraca Pacific, Inc., Liberty Woods Int'l, Inc., MJB Wood Group, Inc. AKA MJB Wood Group, LLC, Patriot Timber Products, Inc., ECF No. 47-1 (Apr. 24, 2020) ("Importers Alliance Br."); Consolidated Pls' Shanghai Futuwood Trading Co., Ltd., Linyi Glary Plywood Co., Ltd., and Far East American, Inc. R. 56.2 Mem. in Supp. of Mot. for J. upon the Agency R., ECF No. 46 (April 24, 2020) ("Futuwood Br."). Unless addressing an argument specific only to a certain plaintiff or plaintiff-intervenor, this opinion refers to Consolidated Plaintiffs and Plaintiff-Intervenors collectively as "Plaintiffs."

[3] See Def.'s Resp. to Consolidated Pls.' R. 56.2 Mots. for J. on the Agency R., ECF No. 56 (Aug. 6, 2020) ("Gov. Br."); Coalition for Fair Trade in Hardwood Plywood Resp. to Mots. for J. on the Agency R., ECF No. 58 (Aug. 7, 2020) ("Coalition Br.").

For the following reasons, the court remands this case for reconsideration consistent with this opinion.

## BACKGROUND

In January 2018, Commerce issued orders on certain hardwood plywood products from China. In relevant part, the Orders[4] cover:

> …hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. …
>
> …For purposes of [the Orders,] a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. The face and back veneers are the outermost veneer of wood on either side of the core irrespective of additional surface coatings or covers as described below. The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers. The core may be composed of a range of materials, including but not limited to hardwood, softwood, particleboard, or medium-density fiberboard (MDF).

AD Order, 83 Fed. Reg. at 512; CVD Order, 83 Fed. Reg. at 515.

In June 2018, the Coalition requested Commerce conduct an anticircumvention inquiry pursuant to 19 U.S.C. § 1677j(c)-(d) and 19 CFR § 351.225(i)-(j). See Letter from Petitioner, Certain Hardwood Plywood Products from the People's Republic of China: Request for Anti-Circumvention Inquiry at 2–4, P.R. 1-4 (June 26, 2018)  ("Petitioner's Request"). Plaintiffs

---

[4] See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) ("AD Order"); Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) ("CVD Order") (collectively, the "Orders").

provided comments to Commerce opposing this request.[5] In September 2018, Commerce initiated an anticircumvention inquiry pursuant to 19 U.S.C. § 1677j(d) with respect to later-developed merchandise. See Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders, 83 Fed. Reg. 47,883 (Dep't Commerce Sept. 21, 2018) ("Initiation Notice"). This inquiry sought to determine whether: (1) certain plywood with face and back veneers made of radiata and/or agathis pine (2) "[h]as a Toxic Substances Control Act (TSCA) or California Air Resources Board (CARB) label certifying that it is compliant with TSCA/CARB requirements; and (3) is made with a resin, the majority of which is comprised of one or more of the following three product types—urea formaldehyde, polyvinyl acetate, and/or soy" ("inquiry merchandise") is later-developed merchandise circumventing the Orders. Id. at 47,883, 47,885.

In initiating this inquiry, Commerce examined the Coalition's claims that inquiry merchandise was not commercially available prior to the initiation of the investigations, but was developed, produced and marketed after the Orders as "a direct substitute for merchandise subject to the Orders." Id. at 47,883, 47,885–86. Commerce identified 43 Chinese exporters of inquiry merchandise, but due to resource constraints ostensibly limited individual examination to three mandatory respondents who account for the largest exports by volume: Lianyungang Yuantai International Co., Ltd. ("Yuantai"), Linyi Glary Plywood Co., Ltd. ("Glary"), and Shanghai Futuwood Trading Co., Ltd. ("Futuwood"). See Anti-Circumvention Inquiry of Certain

---

[5] See Letter on Behalf of Importers Alliance to Commerce, Objection to Second Request for Anti-Circumvention Inquiry, P.R. 30-32 (June 26, 2018); FEA & Chinese Exporters, Comments in Opposition to Request for Anti-Circumvention Inquiry, P.R. 35 (July 16, 2018); Letter on Behalf of IKEA to Commerce, Petitioners' Second Anti-Circumvention Inquiry Request, P.R. 36 (July 16, 2018); Shelter Forest, Comments on Certain U.S. Producers' Request for Anti-Circumvention Inquiry, P.R. 37-39 (July 16, 2018).

Hardwood Plywood Products from the People's Republic of China: Respondent Selection, at 2–6, P.R. 128 (Nov. 9, 2018) ("Respondent Selection Memo"). Commerce issued inquiry (and supplemental) questionnaires to the three exporters.[6] Commerce received responses from the three exporters as well as a sua sponte response to some of the questions raised in a supplemental questionnaire from Shelter Forest. Shelter Forest, Response to Supplemental Questionnaire, P.R. 159 (Feb. 12, 2019).

Commerce issued a preliminary affirmative determination, finding that inquiry merchandise "constitutes later-developed merchandise that is circumventing, and should be included within, the scope of the Orders." Preliminary Decision Memorandum for the Anti-Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China at 21, A-570-051, C-570-052, P.R. 166, (Dep't Commerce June 4, 2019) ("PDM"). In its review of the evidence submitted, Commerce determined that: (1) the inquiry merchandise was not commercially available at the time of the initiation of the investigations of the Orders, PDM at 9–17, (2) applying the statutory criteria, inquiry merchandise is similar to subject merchandise such that it should be included within the scope of the Orders, see id. at 17–21; see also 19 U.S.C. § 1677j(d)(1), and (3) the merchandise under consideration did not incorporate a significant technological advance or alteration of an earlier product requiring Commerce to notify the ITC under 19 U.S.C. § 1677j(e)(1)(C), PDM at 21.

---

[6] See Department of Commerce, Questionnaire to Shanghai Futuwood Trading Company Ltd., P.R. 129 (Nov. 9, 2018); Department of Commerce, Questionnaire to Lianyungang Yuantai International Trade Co., Ltd., P.R. 130 (Nov. 9, 2018); Department of Commerce, Questionnaire to Linyi Glary Plywood Co. Ltd., P.R. 131 (Nov. 9, 2018).

Commerce directed U.S. Customs and Border Protection ("CBP") to "suspend liquidation and to require a cash deposit of estimated duties on unliquidated entries of inquiry merchandise that were entered, or withdrawn from warehouse, for consumption on or after September 18, 2018[.]" Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders, 84 Fed. Reg. 27,081, 27,082 (Dep't Commerce June 11, 2019). The parties dispute whether the signature date (September 18, 2018) or the publication date in the Federal Register (September 21, 2018) is the proper date for Commerce to rely on as the date of initiation, pursuant to 19 C.F.R. § 351.225(l)(2). See Gov. Br. at 53–56; Coalition Br. at 47–50; Shelter Forest Br. at 47–53; Importers Alliance Br. at 34–43; I & D Memo at 41–43.

In response to the preliminary determination, Shelter Forest submitted information regarding the composition of its glue, which Commerce rejected as untimely new factual information ("NFI") pursuant to 19 C.F.R. § 351.301 and 19 C.F.R. § 351.302. See Letter from Shelter Forest, Response to the Department's Question Regarding E0 Glue, P.R. 183 (July 3, 2019) ("Shelter Forest July 3 Letter Submission"); Certain Hardwood Plywood Products from the People's Republic of China: Anti-Circumvention Inquiry – Rejection of Submission, P.R. 188 (July 10, 2019) ("Commerce Rejection of Shelter Forest Submission"). Following Shelter Forest's request, Commerce further declined to solicit the NFI. See Letter from Shelter Forest, Response to Commerce's Letter Dated July 10, 2019, and Request for Commerce to Solicit Necessary New Factual Information, P.R. 193 (July 11, 2019) ("Shelter Forest NFI Request"); Commerce's Denial of Request to Solicit New Factual Information, P.R. 199 (July 17, 2019) ("Commerce Denial of NFI Request").

Following the preliminary determination, Commerce received case briefs and rebuttal briefs from Plaintiffs and other interested parties.[7] Commerce rejected IKEA's rebuttal brief first for containing "untimely new factual information," see Rejected IKEA Rebuttal Brief; Commerce's Original Rejection of IKEA's Rebuttal Brief at 1, P.R. 222 (Aug. 12, 2019), and then in a subsequent letter, Commerce corrected its reason for rejecting a portion of the brief for raising untimely new affirmative argument.  See IKEA Resubmission of Rebuttal Brief; Commerce's Clarified Rejection of IKEA's Rebuttal Brief, P.R. 227 (August 15, 2019) ("Commerce Clarified IKEA Rejection"); IKEA Response to Commerce's Second Rejection of IKEA's Rebuttal Brief, P.R. 229 (Aug. 20, 2019). IKEA contends that this rejection was improper. See IKEA Br. at 35.

Commerce issued its final determination in November 2019, finding inquiry merchandise was later-developed merchandise and was circumventing the Orders. See Final Determination, 84 Fed. Reg. at 65,783; I & D Memo at 36, 44. The parties dispute whether this affirmative determination is supported by substantial evidence and otherwise in accordance with law. See Gov. Br. at 13–43; Coalition Br. at 13–37; Shelter Forest Br. at 22–42; Futuwood Br. at 13-31; Importers Alliance Br. at 8–34; IKEA Br. at 20–29. It is also disputed whether Commerce was required to notify the ITC prior to its determination, see Gov. Br. at 56–58; Coalition Br. at 46–

---

[7] Plaintiffs' submitted case briefs including: Importers Alliance Case Br., P.R. 201 (July 18, 2019); IKEA Case Br., P.R. 202 (July 18, 2019); Shelter Forest Case Br., P.R. 203 (July 18, 2019); Shelter Forest Resubmission of Case Br., P.R. 211 (July 29, 2019); Glary and Futuwood Case Br., P.R. 204 (July 18, 2019). IKEA, Shelter Forest, the Importer's Alliance and the Coalition submitted rebuttal briefs, some of which were rejected by Commerce. See Rejected IKEA Rebuttal Brief, P.R. 213 (July 31, 2019); IKEA Resubmission of Rebuttal Brief, P.R. 225 (Aug. 14, 2019); IKEA Objection to Rejection, P.R. 226 (Aug. 14, 2019); Coalition Rebuttal Brief, P.R. 216 (July 31, 2019); Commerce's Rejection of Shelter Forest Rebuttal Brief, P.R. 220 (Aug. 12, 2019); Commerce's Rejection of Importers Alliance Rebuttal Brief, P.R. 221 (Aug. 12, 2019).

47; IKEA Br. at 31–33; I & D Memo at 36–41, and whether Commerce's application of the China-wide rate as the cash deposit rate was lawful, see Gov. Br. at 51–53; Shelter Forest Br. at 42–47.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi). The court "hold[s] unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1). To determine whether Commerce's actions are supported by substantial evidence, the court assesses whether Commerce's actions are reasonable on the record as a whole. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

**DISCUSSION**

To prevent the circumvention of an antidumping or countervailable duty order, Section 781(d) of the Tariff Act of 1930 (the "Act") provides that Commerce may consider whether merchandise developed after an investigation was initiated is within the scope of such order. 19 U.S.C. § 1677j(d)(1); see also 19 C.F.R. § 351.225(j) ("In determining whether later-developed merchandise is within the scope of an antidumping or countervailing duty order, [Commerce] will apply section 781(d) of the Act."). Commerce must consider the statutory factors and "take into account any advice provided by the [ITC]" in making this determination. 19 U.S.C. § 1677j(d)(1).[8] If later-developed merchandise "incorporates a significant technological advance

---

[8] The statutory factors include whether the later-developed merchandise and the merchandise subject to the original orders have the same general physical characteristics, the same expectations of the ultimate purchasers, the same ultimate use, are sold through the same channels of trade, and are advertised and displayed in a similar manner. 19 U.S.C. § 1677j(d)(1).

or significant alteration of an earlier product[,]" Commerce must notify the ITC prior to making

its determination. 19 U.S.C. § 1677j(e)(1). For the reasons described below, the court holds that

Commerce's affirmative circumvention determination regarding inquiry merchandise

constituting later-developed merchandise is not supported by substantial evidence.[9]

**I.     Commerce's determination that inquiry merchandise constitutes later-developed merchandise pursuant to 19 U.S.C. § 1677j(d) is unsupported by substantial evidence.**

The question before Commerce in this anticircumvention inquiry was whether inquiry

merchandise qualified as later-developed merchandise under 19 U.S.C. § 1677j(d). See I & D

Memo at 6. Commerce's affirmative determination is not supported by substantial evidence for

three reasons.

First, Commerce defined inquiry merchandise narrowly, adopting the exact definition

proposed by the Coalition, that imposed almost impossible requirements on the Plaintiffs to show

that inquiry merchandise was commercially available prior to December 8, 2016. Compare

Petitioner's Request, at 7–9; with Initiation Notice, 83 Fed. Reg. at 47,883, 47,885. Such near

impossibility is reflected in Commerce's requirement that respondents provide evidence of the

actual TSCA or CARB label adhered to the product to demonstrate compliance, as opposed to

accepting other evidence that could equally indicate the product met CARB or TSCA

---

These factors are not the focus of this action. Rather, Plaintiffs challenge the threshold question
of whether the merchandise at issue is later-developed at all.

[9] Plaintiffs do not dispute Commerce's application of a "commercial availability" standard to
assess whether inquiry merchandise was later-developed. Gov. Br. at 13–14; see also Shelter
Forest Br. at 22–25; Importers Alliance Br. at 12; IKEA Br. at 23– 28; Futuwood Br. at 8, 25–26.
This standard, however, is not in the statute and appears to have derived from Commerce past
practice. Id.; 19 U.S.C. § 1677j(d). Regardless of the contours of this standard, it is unreasonable
for Commerce to apply it so narrowly as to preclude the consideration of probative evidence, as
it has done here.

specifications. I & D Memo at 3, 19–21, 26. The lack of a reasoned basis for the labeling requirement undermines Commerce's determination that Glary and Yuantai did not produce inquiry merchandise prior to December 8, 2016.

Glary submitted CARB certified labels for plywood dated after December 8, 2016, but CARB certificates only for the years 2013-2018. Id. at 10, 19. Glary also submitted sales documentation, including purchase orders and invoices from prior to December 2016, which show requests for "CARB certified" labels. Id. Invoices and packing lists appear to confirm that the merchandise complied with the label requirement. Id.[10] Glary contends that CARB certification only applies to product lines and not specific sales so it cannot provide further evidence of its compliance with the label requirement. Id.  at 10, 19.

Commerce has not provided a sound basis for why it is reasonable to require evidence of the actual labels or why it cannot accept other evidence that a producer is certified and able to fulfill sales requests with CARB compliant labels. See id.at 19. The Government points to no evidence that respondents would keep the required label information in the normal course of business. Without an explanation as to why it is reasonable to require evidence of the actual labels in Commerce's assessment of later-developed merchandise, the court cannot determine whether Commerce properly concluded that the CARB certificates and supporting sales documentation submitted by Glary were insufficient to demonstrate that inquiry merchandise was commercially available prior to December 8, 2016. On remand, Commerce should consider

---

[10] Similarly, Yuantai provided a purchase order requesting CARB compliant plywood, supported by its supplier's CARB certificate. I & D Memo at 26. Commerce also found this evidence insufficient because Yuantai did not demonstrate the plywood product was actually labeled CARB compliant. Id.

whether it may accept other evidence that indicates TSCA or CARB product compliance or otherwise explain why evidence of the actual labels is required for its assessment.

Second, Commerce's determination that no respondent met the glue requirement for inquiry merchandise is not supported by substantial evidence. Commerce appears to have placed unreasonable expectations on respondents regarding the evidence required to demonstrate a product "is made with a resin, the majority of which is comprised of one or more of the following three product types—urea formaldehyde, polyvinyl acetate, and/or soy" to show inquiry merchandise was commercially available prior to December 8, 2016. See id. at 3, 11–15, 21, 23–26. Shelter Forest submitted two sworn statements to support its claim that inquiry merchandise was commercially available prior to December 8, 2016, both of which stated its plywood was made with a "urea formaldehyde base."[11] Id. at 24. Commerce concluded that because these statements described the glue as "urea formaldehyde base" and did not include the word "majority", the glue did not meet the third criteria of inquiry merchandise. Id. at 24–25. The natural reading of "base" in this context is that the majority of the composition is urea formaldehyde. Commerce suggests that it would have been convinced only by documentation demonstrating "the exact composition of [Shelter Forest's] resin to demonstrate that the majority was of urea formaldehyde[,]" see id. at 24, but did not ask Shelter Forest for supplemental

---

[11] Shelter Forest's two sworn declarations stated as follows:

(1) "[In] Shelter Forest's Q&V Response, Zhang FangMu, the General Manager of Shelter Forest's China operations states, '{t}he resin was specified as E0 urea formaldehyde base with an emissions standard of less than .04ppm of Formaldehyde, and therefore can be CARB certified . . . ' "

(2) "With Shelter Forest's Initiation Comments, Ryan Loe states that the '{s}pecification confirms that the glue used [for its plywood] is eZERO (Melamine Fortified), which is a glue made from a urea formaldehyde base."

I & D Memo at 24.

information and refused to review it once Shelter Forest submitted it. See Commerce Rejection of Shelter Forest Submission; Commerce Denial of NFI Request. This determination was unreasonable, as discussed further in Section II infra.

Glary, however, after providing its glue recipe, photographs of its present-day glue production and CARB certificates from 2013-2018 showing certification to produce plywood which required urea formaldehyde glue, still failed in Commerce's view to demonstrate it met the resin criteria of inquiry merchandise. I & D Memo at 21.[12] Commerce concluded that Glary only demonstrated that it could make inquiry merchandise, not that it did actually produce it. Id. Thus, it concluded inquiry merchandise had not been shown to be commercially available prior to December 8, 2016. Id. Once again, Commerce applied strict requirements for historical evidence. Taken as a whole, Commerce's determination that respondents did not meet the resin criteria of inquiry merchandise is not supported by substantial evidence. On remand, Commerce shall explain what evidence it specifically requires with regard to the resin requirement of inquiry merchandise, explain why that evidence is required, identify any deficiencies in respondents' evidence, and to the extent necessary, provide respondents an opportunity to submit the supplemental information it requires.

Finally, Commerce's determination that Yuantai did not meet the specific wood requirements for inquiry merchandise is not supported by substantial evidence. Commerce appears to have unreasonably concluded that Yuantai's submission of a plywood purchase

---

[12] Futuwood and Glary argue that plywood must be bonded with urea formaldehyde glue to be CARB certified. I & D Memo at 11. Commerce determined that in order to show this, an interested party must "provide[ ] an exhaustive list identifying all CARB compliant glues, identifying urea formaldehyde as the only CARB compliant glue." Id. at 23–24. No party points to evidence showing whether CARB certification requires or makes evident certain glue use, but Commerce's conclusions on this point are unsubstantiated.

contract was entirely unreliable because of a translation error and refused to allow for correction or explanation. Id. at 25–26, 29–30. The parties dispute whether the error was minor, whether it made the entire document unreliable and whether Commerce was obligated to give Yuantai an opportunity to explain the error. Id. at 13, 25–26, 29–30; Importers Alliance Br. at 27–31; Gov. Br. at 32–38; Coalition Br. at 30–32. Commerce concedes that the plywood purchase contract clearly shows the purchase of plywood with radiata pine veneers. I & D Memo at 26. The contract also shows CARB compliant merchandise with E0 glue. Id. By not giving Yuantai an opportunity to correct or explain the error, the court cannot determine whether Commerce acted reasonably in not considering the purchase contract. On remand, Commerce shall provide Yuantai with the opportunity to correct or explain the error and either consider the document or explain why the error makes the entire document unreliable.

## II.    Commerce's rejection of Shelter Forest's July 3 submission was unreasonable

The parties dispute whether Shelter Forest's July 3 letter submission regarding the composition of its glue was untimely NFI such that Commerce was justified in rejecting it.[13] The Government contends that Commerce's rejection of this submission as untimely NFI is lawful and within its discretion pursuant to 19 C.F.R. §§ 351.301, 351.302 and 351.204(c). Gov. Br. at 43–51; Commerce Denial of NFI Request at 2–3; Commerce Rejection of Shelter Forest Submission at 2; see also Coalition Br. at 37–43. The Government also argues that Commerce was not required to solicit additional factual information from Shelter Forest. Gov. Br. at 49–51. Shelter Forest counters that Commerce's refusal to consider its letter submission was unlawful and an abuse of discretion because Commerce's regulations permit the acceptance and review of

---

[13] See Shelter Forest July 3 Letter Submission; Commerce Rejection of Shelter Forest Submission; Shelter Forest NFI Request; Commerce Denial of NFI Request at 2–3.

NFI at any time during the proceeding. Shelter Forest Br. at 10–22 (citing 19 C.F.R. §§ 351.301(a), 351.302(b), (d)(1)); see also IKEA Br. at 29–31 (arguing that Commerce's refusal to accept or solicit the additional information from Shelter Forest was unfair and arbitrary). For the reasons stated infra, the court holds that Commerce abused its discretion in not considering Shelter Forest's submission regarding the content of its glue.

The purpose of this anticircumvention inquiry is to determine accurately whether inquiry merchandise is later-developed such that it should be considered "within the scope of an outstanding antidumping or countervailing duty order issued[.]" 19 U.S.C.§ 1677j(d). As a part of this investigation, Commerce must give respondents notice when it identifies deficiencies in submissions and provide parties with an opportunity to respond. See 19 U.S.C. § 1677m(d). Commerce's argument that it acted within its discretion in not considering Shelter Forest's submission fails for three reasons: (1) the nature of later-developed merchandise inquiries is such that Commerce should be very accepting of volunteers, not distinguish strictly between mandatory and voluntary respondents as Commerce purported to do here, particularly when there is only one voluntary respondent, which had already met the other two criteria for inquiry merchandise; (2) Commerce reviewed and considered Shelter Forest's submissions in its later-developed merchandise analysis, creating an impression that it was accepted as a respondent, without providing any notice to Shelter Forest of any deficiencies until the PDM; and (3) an interest in fairness and accuracy outweighs any burden placed on Commerce in reviewing Shelter Forest's submission under the facts of this case.

19 U.S.C. § 1677j(d) is silent on procedures for identifying or selecting potential respondents for individual examination. The Government argues that Commerce was not required to consider Shelter Forest's submission because it limited its inquiry to the three

mandatory respondents. Gov. Br. at 49–51. Commerce found no established practice when "forced to limit its examination due to the large number of potential respondents relative to its resource constraints." Respondent Selection Memo at 3. As a result, Commerce used guidance provided by section 777A(c) of the Act, codified as 19 U.S.C. § 1677f-1(c),[14] which allows Commerce to limit its individual examinations to a reasonable number of exporters in an antidumping review if it determines that "it is not practicable to make individual weighted average dumping margin determinations . . ." for all known exporters or producers "because of the large number of exporters or producers involved in the investigation or review[.]" 19 U.S.C. § 1677f-1(c)(2); see also Respondent Selection Memo at 2–4. Section 1677f-1 is silent on what constitutes a "large number of exporters or producers." 19 U.S.C. § 1677f-1(c)(2). Commerce construed 43 Chinese exporters of inquiry merchandise as a large number, and considering its resources and statutory obligations, limited its individual examinations to the three largest exporters. Respondent Selection Memo at 3–6.

---

[14] 19 C.F.R. § 351.204, which sets out procedures "regarding the selection of persons to be examined, [and] the treatment of voluntary respondents that are not selected for individual examination" refers Commerce to Section 77A of the Act for an appropriate method by which Commerce may limit an investigation. Section 77A(c) provides:

> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—

> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or

> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

19 U.S.C. § 1677f-1(c)(2).

Commerce has some discretion to consider its resources and limit an investigation, but the court concludes that it has abused this discretion by limiting its investigation in such a way to preclude Shelter Forest's submission. Where possible, Commerce should accept volunteers in a later-developed merchandise inquiry to achieve an accurate result. Shelter Forest was the only voluntary respondent, and Commerce had already determined Shelter Forest had met the other two criteria of inquiry merchandise. I & D Memo at 24. Rejecting Shelter Forest's letter submission was inconsistent with Commerce's duty to accurately examine the market and determine whether a particular product was not previously commercially available and therefore, is later-developed merchandise under 19 U.S.C.§ 1677j(d).

Further, Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding any deficiencies, as required by 19 U.S.C. § 1677m(d).[15] The Government argues that Shelter Forest was aware that Commerce had doubts about the content of its glue because (1) Shelter Forest responded to a

---

[15] 19 U.S.C. § 1677m(d) provides the following:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—
>
> (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
>
> (2) such response is not submitted within the applicable time limits,
>
> then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

supplemental questionnaire issued to mandatory respondents that requested information about the content of the glue, (2) in that response, Shelter Forest did not submit the additional information regarding the content of its glue, and (3) despite "ample opportunity" otherwise, Shelter Forest did not place the additional factual information regarding its glue on the record, whereas other mandatory respondents did. Gov. Br. at 47–48; see, e.g., Department of Commerce, Supplemental Questionnaire to Linyi Glary Plywood Co. Ltd., P.R. 145 (Dec. 19, 2018); Linyi Glary, Response to Supplemental Questionnaire at 6–7, 17–18, 21–22, Ex. SQ1-8, C.R. 125-130, P.R. 158 (February 12, 2019); c.f. Shelter Forest, Response to Supplemental Questionnaire at 2, 5, 7. For the following reasons, these arguments fail.

Commerce's regulations prescribe time limits for the submission of factual information, requiring submission 30 days before the scheduled date of the preliminary determination. See 19 C.F.R. § 351.301(c)(1), (c)(3)(i)–(ii).[16] Commerce's reliance on these regulations to reject Shelter Forest's submission, however, is unreasonable. Assuming arguendo the filings were untimely, the tardiness resulted from Commerce's failure to notify Shelter Forest of any deficiencies in its submissions until Commerce released its preliminary determination memo. PDM at 16–17.

---

[16] In general, time limits regarding the submission of new factual information have been found to be both necessary and reasonable for Commerce to accomplish its work. Hyosung Corp. v. United States, 35 CIT 343, 347 (2011). Where reasonable, Commerce may set and enforce deadlines by rejecting untimely filings. See 19 C.F.R. §§ 351.301, 351.302; but see NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207 (Fed. Cir. 1995) ("a regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion."); ArcelorMittal USA LLC v. United States, 399 F. Supp. 3d 1271, 1279–82 (CIT 2019) ("[s]trict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation of its decision." (citation omitted)).

Section 1677m(d) mandates that Commerce provide parties with notice of deficiencies in submissions and where practicable, an opportunity to correct or explain those deficiencies. 19 U.S.C. § 1677m(d). Shelter Forest's access to supplemental questionnaires seeking additional information from the mandatory respondents did not provide adequate notice that its glue evidence was deficient. Until Commerce identified this deficiency in the PDM, Shelter Forest did not have an opportunity to provide additional evidence regarding the content of its glue. PDM at 16–17. Subsequently, Shelter Forest promptly attempted to correct the deficiencies identified with evidence that it claims unequivocally shows inquiry merchandise was commercially available prior to December 8, 2016. See Shelter Forest July 3 Letter Submission at 2. Commerce abused its discretion by rejecting this information as untimely. 19 C.F.R. § 351.301 and § 351.302 cannot be read to discharge Commerce of its obligation to notify respondents of deficiencies in submissions under § 1677m(d) and then allow Commerce to claim attempts to correct those deficiencies are untimely. Under 19 U.S.C. § 1677m(d), Commerce must raise identified deficiencies such as this one and provide respondents with an opportunity to explain, correct or supplement it.

Furthermore, Commerce cannot plausibly argue that it does not have the resources to review Shelter Forest's submission pursuant to 19 U.S.C. § 1677m(a). Gov. Br. at 48–50. The Government does not point to any other voluntary respondent that Commerce considered, see PDM at 4, nor does it provide any evidence to suggest that reviewing Shelter Forest's submission would be unduly burdensome. Gov. Br at 48–50. Commerce had more than four months to review the approximately 100-page submission prior to its issuance of the final determination. See Shelter Forest July 3 Letter Submission; see also Final Determination, 84 Fed. Reg. 65,783. The Government's argument regarding resource constraints is further suspect because Commerce

already reviewed Shelter Forest's submission and determined Shelter Forest met two of the three requirements of inquiry merchandise. PDM at 4, 13, 15. It is unreasonable for Commerce to now claim that it would be administratively burdensome to consider Shelter Forest's prompt attempt to correct these identified deficiencies simply because it considers Shelter Forest in a different category from that of a mandatory respondent. Gov. Br. at 47–51; see also PDM at 16–17.

Furthermore, the circumstances here suggest that "the interests in fairness and accuracy outweigh [any] burden [placed] upon Commerce" in considering Shelter Forest's submission. Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States, 36 CIT 98, 125, 815 F. Supp. 2d 1342, 1365–67 (2012) (finding abuse of discretion when Commerce rejected an untimely but vital correction that came early enough in the proceeding to minimize the burden on Commerce of reviewing it).[17] Shelter Forest is purportedly providing evidence that the glue used in certain products sold prior to December 2016 is more than 98% urea formaldehyde, Shelter Forest Br. at 20, which if true would result in inquiry merchandise not being later-developed. See I & D Memo at 24. Apparently, Shelter Forest went to extraordinary lengths to retrieve and submit documentation on the composition of its glue in response to the PDM. See Shelter Forest July 3 Letter Submission at Exhibit 1; see also Shelter Forest Br. 21–22; PDM at 16–17. If Commerce was only to be persuaded by several-year-old paper records detailing glue preparation and production, it was required to notify Shelter Forest of that requirement and provide an opportunity to respond. Any burden imposed on Commerce in reviewing Shelter Forest's submission is minimal and its decision to reject it points to an abuse of discretion, likely to lead to an inaccurate and punitive result. C.f. ArcelorMittal USA LLC, 399 F. Supp. 3d at 1281–82.

---

[17] On a different set of facts, the court in Grobest was guided by "the remedial, and not punitive, purpose of the antidumping statute. . . and the statute's goal of determining margins "as accurately as possible[.]" Id. at 1365 (internal citations and quotation marks omitted).

Accordingly, on remand, Commerce shall consider Shelter Forest's July 3 submission, notify Shelter Forest of any deficiencies, and provide an opportunity to correct or explain those deficiencies, in accordance with 19 U.S.C. § 1677m(d).

### III.    Application of the China-wide rate of 182.90% as the cash deposit rate

Shelter Forest contends that Commerce applied AFA when it declined to review additional factual information from Shelter Forest and nonetheless, applied the China-wide cash deposit rate of 182.90%. Shelter Forest Br. at 42–47. The Government avers that it is not applying AFA to any of the respondents and that Shelter Forest has a "fundamental misunderstanding" regarding the rate assigned to it in an anticircumvention inquiry, which is derived from the investigation of the underlying Orders. Gov. Br. at 42–53; I & D Memo at 36; see also Coalition Br. at 51–52.

The Government maintains that where it affirmatively finds circumvention of an order, "the antidumping and countervailing duty rates that would apply to the inquiry merchandise would be the [same]. . . rates otherwise applicable to the relevant producer/exporter for in-scope merchandise already subject to the existing orders." Gov. Br. at 51. The assigned rate was set during the underlying investigation of the Orders and not determined during a subsequent administrative review. Gov. Br. at 51 (citing 19 U.S.C. § 1673d(c)(2)). The Government argues Plaintiffs are "subject to the suspension of liquidation of such entries at the China-wide rate (under the antidumping order) or the all-others rate (under the countervailing duty order)" unless Plaintiffs "could certify to CBP that the . . . inquiry merchandise was supplied by a . . . manufacturer [with] its own company-specific separate rate." Gov. Br. at 52; see also I & D Memo at 34–36.

The Government does not point to any opportunity provided to Plaintiffs to show that they were entitled to any rate other than an AFA-derived China-wide rate under the antidumping duty order.[18] Commerce argues it is not required to because Plaintiffs have not provided evidence that the China-wide rate was incorrect and Plaintiffs can request an administrative review to seek to obtain a more favorable assessment rate. Gov. Br. at 52 (citing U.K. Carbon & Graphite Co. v. United States, 37 C.I.T. 1295, 1312–13, 931 F. Supp. 2d 1322, 1336–37 (2013)); see also I & D Memo at 36.[19] Commerce's current approach appears to be inconsistent with the remedial purpose of 19 U.S.C. § 1677j(d). If on remand Commerce continues to reach an affirmative circumvention determination, Commerce shall provide Plaintiffs with an opportunity to demonstrate whether they qualify for a rate that is not derived from an AFA rate or otherwise explain why it is permissible not to provide Plaintiffs with this opportunity.

## IV.   Date of initiation pursuant to 19 C.F.R. § 351.225(l)

Commerce adopted September 18, 2018, the signature date of the Initiation Notice as the effective date of Commerce's inquiry, rather than September 21, 2018, the date of its publication in the Federal Register. I & D Memo at 41–43. The parties dispute the proper date for Commerce to rely on as the date of initiation, pursuant to 19 C.F.R. § 351.225(l)(2)[20]. See Gov. Br at 53–56;

---

[18] The Importers Alliance separately argues that Commerce's unfair weighing of evidence and decision not to verify information submitted by the parties amounted to the application of AFA. Importers Alliance Br. at 13–26. The Government does not point to any evidence demonstrating that Plaintiffs have been uncooperative justifying Commerce's application of AFA.

[19] Apparently, Plaintiffs have not yet requested an administrative review under 19 C.F.R. §§ 351.212(a)–(c), 351.213(b). In any case, a review would not likely completely remedy the harm of an improperly set deposit rate.

[20] The relevant provision provides:

If the Secretary issues a preliminary scope ruling under paragraph (f)(3) of this section to the effect that the product in question is included within the scope of the order, any suspension of liquidation described in paragraph (l)(1) of this

Coalition Br. at 47–50; Shelter Forest Br. at 47–53; Importers Alliance Br. at 34–43. The regulations do not define "the date of initiation" and the statute is silent as to when duties should be imposed. See 19 U.S.C. § 1677j.

The Government's argument that because Commerce's regulations don't explicitly refer to publication, the date of initiation refers to the signature date, fails. Gov. Br. at 55–56; see also Coalition Br. at 48–50. Commerce must give parties adequate notice that their products may be subject to administrative action before suspending liquidation. 19 C.F.R. §§ 351.225(f), (l); Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States, 391 F. Supp. 3d 1301, 1313–14 (CIT 2019), aff'd, 983 F.3d 487 (Fed. Cir. 2020). It is well settled that parties are charged with knowledge of administrative action, such as the inquiry at issue here, as of publication in the Federal Register. See Target Corp. v. United States, 33 C.I.T. 760, 779–80, 626 F. Supp. 2d 1285, 1300–01 (2009), aff'd, 609 F.3d 1352 (Fed. Cir. 2010) (citing 44 U.S.C. § 1507; Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384–85 (1947), for the proposition that publication in the Federal Register provides legal notice of its contents); Tai-Ao Aluminium, 391 F. Supp. 3d at 1314 ("Typically, publication [in the Federal Register] ... is sufficient to give notice of the contents of the document to a person subject to or affected by it.") (citation and internal quotation marks omitted).

Under 19 C.F.R. § 351.225(l)(2), "the date of initiation" cannot be the internal signature date of September 18, 2018 because the parties were not provided with adequate notice until the

---

section will continue. If liquidation has not been suspended, the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption on or after the date of initiation of the scope inquiry . . .

19 C.F.R. § 351.225(l)(2) (emphasis added).

Initiation Notice was published in the Federal Register on September 21, 2018. Initiation Notice 83 Fed. Reg. at 47,883. As Commerce cannot suspend liquidation prior to providing parties with notice and the Government provides nothing to show the parties received adequate notice prior to publication, the date of initiation in this case must refer to the date of publication in the Federal Register. See Tai-Ao Aluminium, 391 F. Supp. 3d at 1313-14 ("Commerce cannot suspend liquidation until the date at which it provided the parties notice that their products could be subject to the administrative action."); see also Shelter Forest Br. at 47–53; Importers Alliance Br. at 34–39. Commerce's interpretation of 19 C.F.R. § 351.225(l)(2) that the "initiation date" refers to the signature date is not in accordance with law. Accordingly, on remand, if Commerce continues to find circumvention of the Orders, it should amend the effective date to the publication date.

## V.   Notification to the ITC

IKEA contends that Commerce's decision not to notify the ITC violates 19 U.S.C. § 1677j(e)(1)(C), which states that Commerce must consult the ITC "with respect to any later-developed merchandise which incorporates a significant technological advance or significant alteration of an earlier product[.]" 19 U.S.C. § 1677j(e)(1)(C). Commerce counters that "altering the production process of hardwood plywood" to produce inquiry merchandise as a substitute for the Order's subject merchandise, does not require Commerce to notify the ITC under § 1677j(e)(1)(C). I & D Memo at 39–41.

IKEA's argument rests on a prior decision by Commerce not to initiate a minor alterations anticircumvention inquiry on softwood plywood because it was a "different product" from merchandise covered by the Orders and fell outside of the scope of the Orders. IKEA Br. at 13, 20–23; see Certain Hardwood Plywood Products from the People's Republic of China: Minor Alterations Anti-Circumvention Inquiry Request at 12–16, A-570-051, C-570-052 (Dep't

Commerce Apr. 2, 2018) ("Non-Initiation Memo"); Columbia Forest Products v. United States, 399 F. Supp. 3d 1283, 1292–94 (CIT 2019). There, Commerce stated that the inclusion of "plywood with both face and back veneers of softwood, which was not considered in the ITC's injury analysis, could potentially create a conflict with the ITC injury determination, and impermissibly expand the scope of the Orders." Non-Initiation Memo at 14–15; see also Certain Hardwood Plywood Products from the People's Republic of China: Final Scope Comments Decision Memorandum at 17–19, A-570-051, C-570-052 (Dep't Commerce Nov. 6, 2017).[21]

Commerce attempts to distinguish that analysis by arguing that later-developed merchandise inquiries are distinct from minor alterations inquiries under 19 U.S.C. § 1677j(c), which was at issue in the prior case. See Gov. Br. at 18–21, 56–58; Coalition Br. at 46–47; I & D Memo at 39–41.[22] It is odd, however, that Commerce concluded that the broad category of softwood plywood may be in conflict with the ITC injury determination, but inquiry merchandise, which is a subset of softwood plywood, would not only not require notification to the ITC but also would not "conflict with the ITC injury determination, and impermissibly

---

[21] This court sustained Commerce's determination not to initiate a minor alterations anticircumvention inquiry regarding softwood plywood pursuant to 19 U.S.C. § 1677j(c)(2) as supported by substantial evidence and in accordance with law. Columbia Forest Products, 399 F. Supp. 3d at 1295–96.

[22] The two inquiries are in fact distinct, with separate statutory requirements. Section 1677j contemplates several inquiries Commerce may pursue to determine whether a product is circumventing and therefore should be interpreted as included in the scope of an AD or CVD order. While a later-developed merchandise inquiry focuses on the statutory factors provided in Section 1677j(d), minor alterations inquiries concern "articles altered in form or appearance in minor respects . . . whether or not included in the same tariff classification." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (citing 19 U.S.C. § 1677j(c)(1)). Both provisions, however, provide a mechanism to Commerce to consider whether "certain types of articles within the scope of an order will be a proper clarification or interpretation of the order instead of improper expansion or change even where these products do not fall within the order's literal scope." Id. at 1370.

expand the scope of the Orders." <u>Non-Initiation Memo</u> at 14–15; <u>see also</u> <u>I & D Memo</u> at 8–10.

If on remand, Commerce continues to believe an affirmative circumvention determination is

warranted, Commerce should consider whether notification to the ITC is required by 19 U.S.C. §

1677j(e)(1) in light of its prior assessment and conclusions regarding the scope of the Orders,

<u>see, e.g.</u>, <u>Non-Initiation Memo</u> at 12–16. Should Commerce continue to believe that it is not

required to notify the ITC, Commerce should address whether its decision is subject to judicial

review. 19 U.S.C. § 1677j(e)(1)(C).

**VI.   IKEA's rebuttal brief**

      Commerce rejected a portion of IKEA's rebuttal brief for raising a new affirmative

argument not raised in its case brief. <u>Commerce Clarified IKEA Rejection</u>. IKEA contends that

the rejection was improper under 19 C.F.R. § 351.309(d) and maintains that its rebuttal "directly

addressed legal arguments presented in case briefs. . . . [and] argued important nuances to others'

arguments." IKEA Br. at 35; <u>see also</u> <u>Rejected IKEA Rebuttal Brief</u>; <u>IKEA Resubmission of</u>

<u>Rebuttal Brief</u>. The Government maintains that its decision to reject a portion of IKEA's rebuttal

was both reasonable and lawful. <u>See</u> Gov. Br. at 58–60; <u>see also</u> Coalition Br. at 52–53.

      Commerce abused its discretion in rejecting IKEA's new legal argument in its rebuttal

brief pursuant to §351.309(d) because IKEA refers to an intervening court decision that was

decided after the case briefs had been submitted. <u>See</u> <u>Rejected IKEA Rebuttal Brief</u>, at 2–4

(citing <u>Columbia Forest Products</u>, 399 F. Supp. 3d 1283); <u>see also</u> <u>IKEA Case Br.</u> (submitted to

Commerce 13 days before the decision in <u>Columbia Forest Products</u>). Although pursuant to

§351.309(d), a rebuttal brief may only respond to arguments previously raised in case briefs, it is

unreasonable for Commerce to reject new legal authority in a rebuttal brief where it was

impossible for a party to submit the relevant legal authority in the case briefs because the

decision had not yet been published. Commerce, therefore, in not considering the newly raised legal authority, abused its discretion.

Furthermore, IKEA's reference to Columbia Forest Products is likely relevant to the anticircumvention proceeding at issue here. IKEA points to Columbia Forest Products to persuade Commerce that regardless of whether evidence shows inquiry merchandise was later-developed, Commerce should reach a negative circumvention determination based on the administrative record underlying the Orders. Rejected IKEA Rebuttal Brief, at 2–4 (citing Columbia Forest Products, 399 F. Supp. 3d 1283). The court does not opine on this issue, but merely finds Commerce should not have rejected the rebuttal brief and should have dealt with the legal argument presented.

## CONCLUSION

 For the foregoing reasons, Commerce's determination that inquiry merchandise constitutes later-developed merchandise and is circumventing the Orders under 19 U.S.C § 1677j(d) is remanded. The remand determination shall be issued within 60 days hereof. Comments may be filed 30 days thereafter and any response 15 days thereafter.

   /s/ Jane A. Restani        _
Jane A. Restani, Judge

Dated: February 18, 2021
        New York, New York