*Shelter Forest International Acquisition Inc., et al. v. United States*
**Consol. Court No. 19-00212, Slip Op. 21-19 (CIT February 18, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.      SUMMARY

The Department of Commerce (Commerce) has prepared these final results of

redetermination in accordance with the opinion and remand order of the U.S. Court of

International Trade (the Court) in *Shelter Forest International Acquisition Inc., et al. v. United

States*, Consol. Court No. 19-00212, Slip Op. 21-19 (CIT February 18, 2021) (*Remand Opinion

and Order*).  These final results of redetermination concern Commerce's affirmative final

determination in the anti-circumvention inquiry[1] of the antidumping duty (AD) and

countervailing duty (CVD) orders on certain hardwood plywood products (plywood) from the

People's Republic of China (China), conducted pursuant to section 781(d) of Tariff Act of 1930,

as amended (the Act).[2]  We conducted the inquiry following a request from the Coalition for Fair

Trade in Hardwood Plywood (the petitioner) for Commerce to determine whether certain

hardwood plywood with face and back veneers of radiata and/or agathis pine that:  (1) has a

Toxic Substances Control Act (TSCA) or California Air Resources Board (CARB) label

---

[1] *See Certain Hardwood Plywood Products from the People's Republic of China:  Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 84 FR 65783 (November 29, 2019) (*Final Anti-Circ Determinations*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Certain Hardwood Plywood Products from the People's Republic of China:  Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 FR 504 (January 4, 2018) and *Certain Hardwood Plywood Products from the People's Republic of China:  Countervailing Duty Order*, 82 FR 513 (January 4, 2018) (collectively, *Orders*).

certifying that it is compliant with TSCA/CARB requirements; and (2) is made with a resin, the majority of which is comprised of one or more of the following three product types – urea-formaldehyde, polyvinyl acetate, and/or soy (inquiry merchandise), is circumventing the *Orders*.[3]  In its February 18, 2021, *Remand Opinion and Order*, the Court held that:  (1) Commerce's affirmative circumvention determination is unsupported by substantial evidence;[4] (2) Commerce unreasonably rejected Shelter Forest International Acquisition Inc.'s (Shelter Forest's) July 3, 2019, submission;[5] (3) the application of the adverse facts available (AFA)-derived China-wide rate to producers/exporters of inquiry merchandise is inconsistent with the purpose of section 781(d) of the Act;[6] (4) the signature date is not the correct effective date for the date of initiation of the inquiry;[7] (5) Commerce must further assess whether the International Trade Commission (ITC) should be notified of an affirmative determination;[8] and (6) Commerce should not have rejected IKEA Supply AG (IKEA)'s rebuttal brief.[9]

In connection with the above findings, the Court required Commerce to consider several issues, and it directed Commerce to:  (1) consider whether it may accept evidence, other than labels, that indicates TSCA or CARB product compliance or otherwise explain why evidence of actual labels is required for its assessment;[10] (2) explain what evidence it specifically required with regard to the resin formulation used to produce inquiry merchandise and why that evidence is required, identify any deficiencies in respondents' evidence, and, to the extent necessary,

---

[3] *See* Petitioner's Letter, "Request for Anti-Circumvention Inquiry," dated June 26, 2018 (Petitioner's Request).
[4] *See Remand Opinion and Order* at 10-14 (citing a submission made by Shelter Forest on July 3, 2019, which Commerce had removed from the record because it contained new factual information (NFI)).
[5] *Id.* at 14-21.
[6] *Id.* at 21-22.
[7] *Id.* at 22-24.
[8] *Id.* at 24-26.
[9] *Id.* at 26-27.
[10] *Id.* at 11-12.

provide respondents an opportunity to submit supplemental information;[11] (3) provide Lianyungang Yuantai International Co., Ltd. (Yuantai) the opportunity to correct or explain the translation error in its purchase contract and either consider the document or explain why the error makes the entire document unreliable;[12] (4) consider Shelter Forest's July 3 submission, notify Shelter Forest of any deficiencies in it, and allow Shelter Forest to correct or explain those deficiencies;[13] and (5) allow IKEA to refile its rebuttal brief.[14]

The Court further ruled that, if on remand, Commerce continues to reach an affirmative circumvention determination, Commerce shall:  (1) provide Shelter Forest, IKEA, Shanghai Futuwood Trading Co. (Futuwood), *et al.*, and the Importers Alliance[15] (collectively, Plaintiffs) an opportunity to demonstrate whether they qualify for a cash deposit rate that is not derived from an AFA rate or otherwise explain why it is permissible not to provide Plaintiffs with this opportunity;[16] (2) amend the effective date of the affirmative determination to the publication date of the initiation notice;[17] and (3) in light of its prior assessment and conclusions regarding the scope of the *Orders*, consider whether Commerce must notify the ITC pursuant to section 781(j)(e)(1) of the Act, and if Commerce continues to find that it is not required to notify the ITC, address whether its decision is subject to judicial review.[18]

---

[11] *Id*. at 13.
[12] *Id*. at 14.
[13] *Id*. at 21.
[14] *Id*. at 27.
[15] The Importers Alliance includes Taraca Pacific, Inc., Liberty Woods International, Inc., MJB Wood Group, Inc., and Patriot Timber Products, Inc.
[16] *See Remand Opinion and Order* at 22.
[17] *Id*. at 24.
[18] *Id*. at 26.

As set forth in detail below, pursuant to the Court's *Remand Opinion and Order*, we requested and received Shelter Forest's July 3 submission of NFI,[19] IKEA's rebuttal brief,[20] and Yuantai's revised English translation of its purchase contract and explanation of the errors in the originally-submitted document.[21] We revisited and reevaluated the record evidence and reviewed all comments from interested parties.[22] We also issued a supplemental questionnaire to Shelter Forest regarding its NFI submission, to which it provided a timely response.[23]

On April 5, 2021, Commerce released to interested parties the Draft Remand Results and established the deadline for interested parties to submit comments on the Draft Remand Results.[24] On April 13, 2021, the petitioner, Shelter Forest, Importers Alliance, and IKEA each timely submitted comments on the Draft Remand Results.[25]

After analyzing the information on the record, we determine for the purposes of these final results of redetermination on remand that inquiry merchandise was not later-developed

---

[19] *See* Shelter Forest's Letter, "Shelter Forest's Response to Department Request," dated March 8, 2021 (Shelter Forest's March 8 Submission).

[20] *See* IKEA's Letter, "IKEA Supply AG's Response to the Request for Information," dated March 9, 2021 (IKEA Rebuttal Brief).

[21] *See* Yuantai's Letter, "Information Request Response," dated March 16, 2021 (Yuantai's Revised Translation and Explanation).

[22] *See* Petitioner's Letters, "Comments on Shelter's New Factual Information," dated March 15, 2021 (Petitioner's March 15 Comments), and "Comments on Yuantai's New Factual Information," dated March 22, 2021; *see also* Importers Alliance Letters, "Comments on Shelter Forest Documentation," dated March 15, 2021, and "Comments on Yuantai Response," dated March 22, 2021; and Shelter Forest's Letter, "Shelter Forest's Comments on New Factual Information," dated March 15, 2021.

[23] *See* Shelter Forest's Letter, "Shelter Forest's Supplemental Questionnaire Response," dated March 25, 2021 (Shelter Forest March 25 SQR). On March 31, 2021, the petitioner commented on Shelter Forest's supplemental questionnaire response. *See* Petitioner's Letter, "Comments on Shelter Supplemental Questionnaire Response," dated March 31, 2021 (Petitioner's SQR Comments). For further discussion, *see* "C. Discussion of Petitioner's Comments" below.

[24] *See* Draft Results of Redetermination Pursuant to Court Remand: *Shelter Forest International Acquisition Inc., et al. v. United States*, Consol. Court No. 19-00212, Slip Op. 21-19 (CIT February 18, 2021) dated April 5, 2021 (Draft Remand Results); *see also* Memorandum, "Deadline for Comments on Draft Remand Redetermination," dated April 8, 2021.

[25] *See* Petitioner's Letter, "Comments on Draft Results of Redetermination," dated April 13, 2021 (Petitioner's April 13 Comments); *see also* Shelter Forest's Letter, "Shelter Forest's Comments on Department Draft Results of Redetermination Pursuant to Court Remand," dated April 13, 2021 (Shelter Forest's April 13 Comments); Importers Alliance's Letter, "Comments on Draft Remand Redetermination," dated April 13, 2021 (Importers Alliance's April 13 Comments); and IKEA's Letter, "IKEA Supply AG's Comments on Draft Remand Redetermination in Cons. Court No. 19-00212, Slip Op. 21-19.," dated April 13, 2021 (IKEA's April 13 Comments).

because it was commercially available prior to December 8, 2016 (*i.e.*, the date of initiation of the less-than-fair-value and CVD investigations). Therefore, Commerce is revising its circumvention determination, finding inquiry merchandise is not circumventing the *Orders*.

## II. DISCUSSION

### A. Background

On January 4, 2018, Commerce published the *Orders* on plywood from China.[26] On June 25, 2018, the petitioner filed a "later-developed merchandise" anti-circumvention inquiry request pursuant to section 781(d) of the Act with respect to inquiry merchandise.[27] In the Petitioner's Request, the petitioner alleged that the inquiry merchandise was not commercially available prior to December 8, 2016, the date of the initiation of the investigations, and that since the initiation of the investigations, inquiry merchandise has been marketed and sold by Chinese exporters as a direct substitute to subject merchandise.[28]

Commerce first analyzed the record evidence provided by the respondents to determine whether inquiry merchandise was later developed. On June 11, 2019, Commerce published its *Preliminary Anti-Circ Determinations*.[29] In the accompanying PDM, we outlined three requirements for inquiry merchandise[30] and the evidence provided by each company that responded to Commerce's requests for information. We preliminarily found that the three

---

[26] *See Orders.*
[27] *See* Petitioner's Request.
[28] *See Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 81 FR 91125 (December 16, 2016); *see also Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 81 FR 91131 (December 16, 2016).
[29] *See Certain Hardwood Plywood Products from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 84 FR 27081 (June 11, 2019) (*Preliminary Anti-Circ Determinations*), and accompanying Preliminary Decision Memorandum (PDM).
[30] Specifically, we defined inquiry merchandise as hardwood plywood that: (1) has face and back veneers of radiata and/or agathis pine; (2) has a TSCA or CARB label certifying that it is compliant with TSCA/CARB requirements; and (3) is made with a resin, the majority of which is comprised of one or more of the following three product types – urea-formaldehyde, polyvinyl acetate, and/or soy.

mandatory respondents (Glary Plywood Co. Ltd. (Glary), Futuwood, and Yuantai) and the one respondent that voluntarily participated (Shelter Forest) failed to demonstrate that inquiry merchandise was commercially available prior to December 8, 2016. With regard to Shelter Forest in particular, Commerce preliminarily found that, although Shelter Forest had previously sold merchandise with two of the three physical characteristics of inquiry merchandise (*i.e.*, its plywood was made with radiata veneers and had a label certifying CARB compliance), it had failed to demonstrate the glue in its merchandise was majority urea-formaldehyde.[31]

Pursuant to our preliminary affirmative circumvention determinations, Commerce directed U.S. Customs and Border Protection (CBP) to suspend liquidation and require cash deposits on entries of inquiry merchandise, effective September 18, 2018, the signature date of the *Initiation Notice*.[32] Further, in the *Preliminary Anti-Circ Determinations*, Commerce found that inquiry merchandise did not incorporate a significant technological advance or alteration of an earlier product. In consideration of this finding, and pursuant to section 781(e)(1)(C) of the Act, Commerce did not notify the ITC of its preliminary determinations.[33]

On July 3, 2019, Shelter Forest submitted a letter responding to the findings outlined in the *Preliminary Anti-Circ Determinations*. On July 10, 2019, however, Commerce rejected Shelter Forest's submission and removed it from the record, because Shelter Forest's letter contained untimely-filed NFI.[34] On July 11, 2019, Shelter Forest requested that Commerce solicit the NFI in the rejected submission[35] so that it could "consider documentation to support

---

[31] *See Preliminary Anti-Circ Determinations* PDM at 16-17.
[32] *See Preliminary Anti-Circ Determinations*, 84 FR at 27082; *see also Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 83 FR 47883 (September 21, 2018) (*Initiation Notice*).
[33] *See Preliminary Anti-Circ Determinations* PDM at 20-21.
[34] *See* Commerce's Letter, "Rejection of Submission," dated July 10, 2019 (Rejection of Shelter Forest Submission).
[35] *See* Shelter Forest's Letter, "Response to Commerce's Letter Dated July 10, 2019, and Request for Commerce to Solicit Necessary New Factual Information," dated July 11, 2019.

Shelter Forest's assertion that the type of glue referred to as 'eZero' or 'E0' is, in fact, a glue made from a urea-formaldehyde base."[36]  Shelter Forest explained that it had been unaware of Commerce's "uncertainty" regarding E0 glue and that it went through extraordinary lengths to ensure that it could "remove any uncertainty" about E0 glue and whether it meets Commerce's inquiry merchandise resin criteria.[37]  On July 17, 2019, Commerce denied Shelter Forest's request.[38]

After considering the issues raised in case and rebuttal briefs,[39] on November 29, 2019, Commerce published the *Final Anti-Circ Determinations*, continuing to find that Glary, Futuwood, Yuantai, as well as Shelter Forest, failed to demonstrate that inquiry merchandise was commercially available prior to December 8, 2016.

Regarding Glary, Commerce found that the company's submitted documentation did not demonstrate that both outer veneers of its plywood were produced with radiata pine.[40]  We also found that Glary did not demonstrate that it sold plywood with CARB/TSCA labels or a resin containing a majority of urea-formaldehyde prior to December 8, 2016.[41]  In the *Final Anti-Circ Determinations*, we stated that the labels Glary provided, which were dated after December 8, 2016, did not confirm Glary's assertion that it produced and sold inquiry merchandise prior to that date.[42]  We also found that CARB certificates alone (*i.e.*, unaccompanied by the CARB labels themselves) were not sufficient to demonstrate that Glary's plywood was labeled CARB

---

[36] *Id.* at 3.
[37] *Id.*
[38] *See* Commerce's Letter, "Denial of Request to Solicit New Factual Information," dated July 17, 2019 (Denial of Shelter Forest Request).
[39] Commerce received case briefs and rebuttal case briefs from several interested parties.  On August 12, 2019, Commerce rejected a rebuttal brief submitted by IKEA containing NFI and permitted IKEA to resubmit its rebuttal brief without the new information.
[40] *See Final Anti-Circ Determinations* IDM at 20.  None of the parties claimed to produce or sell plywood with agathis veneers.
[41] None of the parties claimed to produce or sell radiata pine plywood with polyvinyl acetate or soy resins.
[42] *See Final Anti-Circ Determinations* IDM at 19.

compliant.[43]  Commerce explained that the criterion for inquiry merchandise is that "the merchandise be labeled CARB certified—not that the producer be certified as producing CARB compliant products, and not that the producer be legally able to label its merchandise as CARB certified."[44]  Thus, because Glary relied on a glue recipe dated after December 8, 2016, and its CARB certificates were not directly tied to any production or sales documents of the purported inquiry merchandise, Commerce found that Glary failed to demonstrate that its product met the resin criterion of inquiry merchandise.[45]

Regarding Futuwood, Commerce found that Futuwood did not demonstrate that both front and back veneers of its plywood were made of radiata pine.[46]  Futuwood provided several invoices from a supplier for urea-formaldehyde glue purchases,[47] and it asserted that its suppliers' CARB/TSCA certification was evidence that the glue used to produce the plywood was a majority urea-formaldehyde glue.[48]  In the *Final Anti-Circ Determinations*, however, Commerce found that Futuwood did not demonstrate a link between the purchased urea-formaldehyde glue and the production or sale of plywood with radiata pine veneers.[49]  With respect to the labeling criterion, Commerce found that Futuwood provided sufficient evidence to demonstrate that it sold merchandise labeled as CARB/TSCA certified prior to December 8, 2016.[50]  We explained that "{a}ll of the Futuwood purchase orders indicate that the customer

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 21.

[46] *Id.* at 22-23.

[47] *See* Futuwood's Letter, "Supplemental Questionnaire Response," dated February 12, 2019 at Exhibit SQ1-3.

[48] *See* Glary and Futuwood's Letter, "Hardwood Plywood from the People's Republic of China:  Case Brief," dated July 18, 2019 at 22.

[49] *See Final Anti-Circ Determinations* IDM at 23-24.

[50] *Id.* at 22.

had a requirement to label each crate CARB certified. Futuwood also provided CARB labels that tie to the sales documentation."[51]

With respect to Yuantai, Commerce similarly found that Yuantai did not demonstrate that it produced or sold plywood with outer veneers of radiata pine prior to December 8, 2016. To support its assertion that it sold plywood with both outer veneers of radiata pine, Yuantai provided CBP entry forms, but these entry forms contained entries of plywood with only one veneer of softwood.[52] Yuantai provided other sales documents, but none of those documents clearly indicated that both face and back veneers were comprised of radiata pine.[53] Additionally, Yuantai provided a purchase contract with its plywood producer, but Commerce found that this purchase contract was unreliable because the document contained a translation error which "was not minor and therefore it {could} not assume that the remainder of the document {was} without error."[54] We also found that Yuantai did not demonstrate its plywood was labeled CARB/TSCA compliant and that it provided no reliable evidence of producing or selling plywood made with a majority urea-formaldehyde resin.[55] Yuantai provided its supplier's CARB certification, but provided no evidence to demonstrate a specific product was labeled CARB compliant.

Finally, in reviewing Shelter Forest's submission, Commerce found that Shelter Forest demonstrated that it sold plywood with radiata pine veneers that was labeled CARB certified, but that it did not demonstrate that the glue used to produce that merchandise was majority urea-formaldehyde.[56] Specifically, in the *Final Anti-Circ Determinations* Commerce explained that

---

[51] *Id.*; *see also* Futuwood's Letter, "Questionnaire Response," dated November 26, 2018 at Exhibits 7, 9, and 11.
[52] *Id.* at 25.
[53] *See* Memorandum, "Business Proprietary Information Memo for Issues and Decision Memorandum on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China," dated November 22, 2019 at Notes 2, 3, and 4.
[54] *See Final Anti-Circ Determinations* IDM at 25.
[55] *Id.* at 26.
[56] *Id.* at 24-25.

the record lacked sufficient support for finding "E0" or "eZero" glue, the glue used in Shelter

Forest's radiata pine plywood, was made of majority urea-formaldehyde.[57]

As outlined above, Commerce found that none of the four companies demonstrated that

inquiry merchandise was produced or sold prior to December 8, 2016, and, thus, was

commercially available prior to the initiation of the investigations.  Therefore, in the *Final Anti-*

*Circ Determinations*, we found that inquiry merchandise was a later-developed product

circumventing the *Orders*, and that it was appropriate to include inquiry merchandise in the

scope of the *Orders*.[58]

## B.  Analysis

In the *Remand Opinion and Order*, the Court addressed Commerce's treatment of Shelter

Forest's July 3 submission of NFI.[59]  The Court held that, where possible, Commerce should

accept voluntary participation by respondents in a later-developed merchandise inquiry to

achieve an accurate result and that, because Shelter Forest was:  (1) the only respondent that

voluntarily participated; and (2) its documentation had met two of the three criteria for inquiry

merchandise, Commerce's rejection of Shelter Forest's letter was inconsistent with Commerce's

duty to conduct a fair and accurate examination of the market.[60]  Moreover, the Court found that

Commerce's rejection of Shelter Forest's July 3 letter was an abuse of discretion, explaining that,

because Commerce never notified Shelter Forest of deficiencies in its response in accordance

with section 782(d) of the Act, it could not find Shelter Forest's attempt to remedy its

deficiencies untimely.[61]  Therefore, on remand, the Court directed Commerce to consider Shelter

---

[57] *Id*.
[58] *Id*.
[59] *See* Rejection of Shelter Forest Submission; *see also* Denial of Shelter Forest Request.
[60] *See Remand Opinion and Order* at 16-17.
[61] *Id*. at 19.

Forest's July 3 letter, notify Shelter Forest of any deficiencies, and provide Shelter Forest an opportunity to correct or explain those deficiencies.[62]

Pursuant to the *Remand Opinion and Order*, Commerce requested that Shelter Forest resubmit its July 3 letter,[63] which Shelter Forest did on March 8, 2021.[64] Shelter Forest's March 8 Submission includes a sworn declaration from Mr. Ryan Loe, the President of Shelter Forest. In the sworn declaration, Mr. Loe states that "E0 glue is primarily made from urea formaldehyde{.}" Along with his sworn declaration, Mr. Loe provided several attachments, including: (1) a Google search for the question "what is E0 glue?"; (2) a 2012 document demonstrating Shelter Forest's supplier's method and process for mixing E0 grade urea-formaldehyde glue; and (3) materials for production sheets, glue inspection reports, outbound delivery sheets, the supplier's CARB certification, bills of lading, the supplier invoices, packing lists, and a glue workshop output report for two different plywood purchase contracts.[65]

The sworn declaration from Mr. Loe provides additional clarity as to the composition of Shelter Forest's E0 glue by explaining that E0 glue is "primarily made from urea-formaldehyde." Shelter Forest's March 8 Submission includes documentation from one of its plywood suppliers, explaining its E0 glue production through radiata-veneer plywood production and testing. First, the supplier's method and process for mixing E0 grade urea-formaldehyde glue demonstrates that the supplier's glue was 98 percent urea-formaldehyde.[66] In other words, the glue was made of a majority urea-formaldehyde. The supplier's documentation of its method for making E0 glue was dated in 2012.[67] Second, Shelter Forest provided its sales documentation and its

---

[62] *Id*. at 21.
[63] *See* Commerce's Letter, "Information Request," dated March 5, 2021.
[64] *See* Shelter Forest's March 8 Submission.
[65] *Id*. at Exhibit 1, Attachments A, B, and C/D, respectively.
[66] *Id.* at Exhibit 1, Attachment B.
[67] *Id*.

supplier's production documentation from two purchase contracts with this supplier from 2012.[68] These sales and production documents consistently referenced "E0," "E0 Grade," "urea-formaldehyde glue," "urea-formaldehyde resin," and "radiata pine plywood." Third, Shelter Forest provided a plywood inspection report, showing that the plywood for these specific contracts was made with urea-formaldehyde resin.[69] Using the contract numbers, container numbers from the bills of lading, and documentation from previous submissions, Shelter Forest clearly linked all of these sales and production documents to one another.[70]

Using the purchase order numbers in the supplier's "Container Content and Purchase Order" documents,[71] we are able to tie the production documentation from Shelter Forest's March 8 Submission to the documentation Commerce relied on in finding that Shelter Forest had also sold CARB-labeled plywood with face and back veneers of radiata pine.[72] As an example, using Shelter Forest's March 8 Submission, we selected one purchase order from one plywood supplier contract and tied it to one of Shelter Forest's "manifest unit views."[73] This manifest view contains Shelter Forest's associated customer invoice number. The customer invoice was supplied in Shelter Forest's Comments on Initiation.[74] In the Prelim BPI Memo, we outlined how the documentation provided in Shelter Forest's Comments on Initiation demonstrated that Shelter Forest sold plywood with radiata face and back veneers that was labeled CARB

---

[68] *Id*. at Exhibit 1, Attachments C and D.
[69] *Id*.
[70] *Id*. at Exhibit 1, pages 3-5.
[71] *Id*. at Exhibit 1, pages 3-4 and Attachments C and D.
[72] *See* Memorandum, "Business Proprietary Information Memo for Preliminary Decision Memorandum on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from People's Republic of China," dated June 4, 2019 (Prelim BPI Memo) at Note 6.
[73] *See* Shelter Forest's Letter, "Shelter Forest Quantity and Value Questionnaire Response," dated October 11, 2018 (Q&V Response) at Attachment D. Shelter Forest described its "manifest unit view" as a computer system-generated matrix linking its purchases from Chinese mills to its U.S. customer invoices.
[74] *See* Shelter Forest's Letter, "Comment on Certain U.S. Producers' Request for Anticircumvention Inquiry," dated July 16, 2018 (Shelter Forest's Comments on Initiation) at Attachment F.

compliant.[75]  In both Mr. Loe's sworn declaration and the declaration provided by Shelter

Forest's General Manager, Zhang FangMu, the company representatives explained that all orders

to this same U.S. customer had the same physical characteristics.[76]  Accordingly, because in

Shelter Forest's Comments on Initiation, Shelter Forest provided a CARB label for the same

product, in the same year, for the same customer, Shelter Forest demonstrated that this product

meets the CARB label criterion of inquiry merchandise.

In the *Preliminary Anti-Circ Determinations*, Commerce found that the documentation

provided in Shelter Forest's Comments on Initiation confirmed the veneer and CARB label

criteria for inquiry merchandise, but, because the documentation only referenced "CARB2 glue"

or "E-zero glue," Shelter Forest did not meet the threshold for demonstrating the resin

requirement for inquiry merchandise.[77]  Commerce did not change its preliminary findings in the

*Final Anti-Circ Determinations*, and it expanded them to explain that the record lacked the exact

composition of Shelter Forest's resin, and that none of Shelter Forest's sworn statements asserted

that its glue was a majority urea-formaldehyde.[78]  Shelter Forest's March 8 Submission remedies

these issues.  Mr. Loe's sworn declaration supports Shelter Forest's assertion that the E0 resin

used to produce Shelter Forest's plywood is comprised primarily, or of a majority, of urea-

formaldehyde.  The supporting documentation provided along with the sworn declaration further

supports Shelter Forest's claim.  It demonstrates that Shelter Forest's producer used a majority

urea-formaldehyde glue to produce radiata pine plywood for Shelter Forest's U.S. customer, and

because the customer required all of its merchandise to be CARB certified, the merchandise was

---

[75] *See* Prelim BPI Memo at Note 6.
[76] *See* Shelter Forest's Comments on Initiation at Exhibit 1, pages 7-10; *see also* Shelter Forest's March 8
Submission at Exhibit 1, page 5; and Q&V Response at Exhibit 3, pages 2-3.
[77] *See Preliminary Anti-Circ Determinations* PDM at 16.
[78] *See Final Anti-Circ Determinations* IDM at 24-25.

labeled CARB certified. Further, Shelter Forest demonstrated that this product was produced and sold in 2012. Therefore, in consideration of Mr. Loe's sworn statement, supporting documentation provided by Shelter Forest, and other previously-submitted record evidence, we find that Shelter Forest produced inquiry merchandise and that inquiry merchandise was commercially available prior to December 8, 2016.[79]

In its *Remand Opinion and Order*, the Court held that Commerce's affirmative anti-circumvention determination was unsupported by substantial evidence.[80] The Court held that Commerce's adoption of the petitioner's definition of inquiry merchandise imposed "almost impossible requirements on the Plaintiffs to show that inquiry merchandise was commercially available prior to December 8, 2016."[81] However, despite the Court's concerns with certain requirements of inquiry merchandise, Shelter Forest demonstrated that it produced merchandise meeting the definition of inquiry merchandise. Therefore, because we find that Shelter Forest demonstrated that inquiry merchandise was commercially available prior to December 8, 2016, we find that inquiry merchandise is not later-developed merchandise and is not circumventing the *Orders*.

While we have now reached a negative determination regarding this anti-circumvention inquiry, the Court directed us to address several additional concerns. First, the Court could not determine that Commerce's requirement that parties provide evidence of actual CARB/TSCA labels was reasonable.[82] The Court held that: (1) Commerce lacked a reasoned basis for requiring evidence of the actual CARB/TSCA labels; and (2) Commerce failed to explain why

---

[79] *See* Draft Remand Results at 13; *see also* Shelter Forest's March 8 Submission at Exhibit 1; Q&V Response at Exhibit 3 pages 2-3 and Attachment D; and Shelter Forest's Comments on Initiation at Exhibit 1, pages 7-10 and Attachment F.
[80] *See Remand Opinion and Order* at 10.
[81] *Id*.
[82] *Id*. at 10-11.

other evidence demonstrating that a producer is CARB certified and able to fulfill sales requests with CARB-compliant labels is not acceptable.[83]  Further, the Court found that Commerce pointed to no evidence that CARB/TSCA labels are documents kept in the normal course of business.[84]  On remand, the Court required Commerce to consider whether other evidence that indicates CARB or TSCA compliance is acceptable or explain why actual labels are necessary for Commerce's determination.[85]

In the *Final Anti-Circ Determinations*, Commerce concluded that two of the four participating companies demonstrated that they had labeled merchandise as CARB compliant prior to December 8, 2016.  In particular, with respect to Futuwood, Commerce explained why it found Futuwood had met the CARB label criterion:  "{a}ll of the Futuwood purchase orders indicate that the customer had a requirement to label each crate CARB certified.  Futuwood also provided CARB labels that tie to the sales documentation."[86]  With respect to Shelter Forest, "Shelter Forest provided … invoices that say 'CARB P2 Certified' … statements of CARB Compliance from a supplier …{and} images of 'Pine Plywood' labeled as CARB compliant" on its customer's shelves.  Commerce concluded that "the {CARB label} photograph, in conjunction with sales documentation … demonstrated that Shelter Forest sold plywood prior to December 8, 2016, that was labeled CARB certified."[87]

Both Futuwood and Shelter Forest provided adequate documentation from prior to December 8, 2016, supporting the notion that evidence of historic CARB labels was kept in the normal course of business and that this evidence was reasonably available to these companies.

---

[83] *Id*. at 11.
[84] *Id*.
[85] *Id*. at 11-12.
[86] *See Final Anti-Circ Determinations* IDM at 22.
[87] *See Preliminary Anti-Circ Determinations* PDM at 15, unchanged in *Final Anti-Circ Determinations*.

Further, because we find Shelter Forest has m*et al*l three criteria of inquiry merchandise prior to December 8, 2016, and, thus, inquiry merchandise was not later developed, we find assessing the validity of other potential CARB/TSCA-related documentation at this point is moot.

In addition, the Court held that Commerce's treatment of Yuantai's purchase order was unsupported by substantial evidence.[88]  The Court held that, because Commerce did not provide Yuantai the opportunity to explain or correct the error(s) in its purchase contract, it cannot determine whether Commerce was reasonable in not considering the document.[89]  Accordingly, on remand, the Court directed that Commerce must request a corrected translation of the purchase contract along with an explanation of the original errors,[90] and then consider the document or explain why the error(s) within the translation make the entire document unreliable.[91]

Pursuant to the *Remand Opinion and Order*, Commerce requested that Yuantai submit a corrected English translation of its plywood purchase contract, and an explanation of the errors that were submitted in its supplemental questionnaire response,[92] which Yuantai did on March 8, 2021.[93]  Yuantai explained that the individual who translated the purchase contract initially made errors because:  (1) his personal knowledge with the product was reflected in his translation; (2) his personal misunderstandings of the product were reflected in his translation; (3) he accidentally omitted one sentence and instead included another; (4) he made "input error{s}"; and (5) the translator accidentally included text from other contracts into his translation of this contract.[94]  In sum, according to Yuantai, the translator applied his outside knowledge in

---

[88] *Id*. at 13-14.
[89] *Id*. at 14.
[90] *Id*.
[91] *Id*.
[92] *See* Commerce's Letter, "Information Request," dated March 5, 2021.
[93] *See* Yuantai's Revised Translation and Explanation.
[94] *Id*. at Exhibit 1, "Explanation of Revisions."

translating this contract, and, combined with some typographical errors, he generated an English translation with a multitude of errors.

Yuantai corrected and explained the errors in its purchase contract that Commerce previously deemed unreliable. After considering Yuantai's purchase contract, we find that the purchase contract indicates that Yuantai purchased from its plywood supplier pine plywood that was made with a urea-formaldehyde resin.[95] This purchase contract ties to Yuantai's sales documentation related to its first sale of inquiry merchandise.[96] However, in the *Final Anti-Circ Determinations*, Commerce found that Yuantai did not demonstrate that its merchandise was labeled CARB compliant, and, even if Commerce now considers Yuantai's purchase contract, the contract does not demonstrate that Yuantai's merchandise was labeled as CARB compliant.[97] As discussed above, we did not assess whether additional CARB/TSCA documentation is sufficient for the purpose of this inquiry because Commerce has already reached a negative anti-circumvention determination relying on Shelter Forest's documentation. Therefore, Commerce did not conduct additional analysis of Yuantai's information.

Referencing the evidence provided by Shelter Forest[98] and Glary,[99] the Court next held that Commerce's evidentiary requirements for the resin criterion for inquiry merchandise were too strict.[100] On remand, the Court directed Commerce to explain specifically the evidence that

---

[95] *Id*. at Exhibit 1.
[96] *See* Yuantai's Letter, "Anti-Circumvention Inquiry Supplemental Questionnaire Response," dated February 12, 2019 at Exhibit S-6. Yuantai provided a purchase order from its U.S. customer dated one week prior to the purchase contract with its plywood supplier. The purchase order is for radiata pine plywood made with E0 glue that is CARB 2 compliant and the dimensions are the same as the dimensions in the purchase contract. The corresponding invoice is for the same quantity of plywood ordered with the plywood contract.
[97] *See Final Anti-Circ Determinations* IDM at 26.
[98] Shelter Forest submitted two sworn declarations describing its glue as having a "urea formaldehyde base."
[99] Glary submitted its glue recipe, photos from its present-day glue production, and its CARB certificates from 2013-2018, which indicate Glary was certified for producing plywood with urea-formaldehyde glue.
[100] *See Remand Opinion and Order* at 12-13.

it requires with respect to the resin requirement, why that evidence is required, and, if necessary, to provide respondents an opportunity to submit supplemental information.[101]

Commerce required respondents to demonstrate that the resin used in producing its radiata pine plywood prior to December 8, 2016, was comprised of a majority urea-formaldehyde. The petitioner outlined the importance of the glue composition in its request for initiation, explaining that the use of majority urea-formaldehyde, polyvinyl acetate, or soy resins makes plywood with radiata veneers a direct substitute for subject merchandise.[102] Thus, Commerce's requirement for this criterion is that respondents demonstrate that the glue used in producing the plywood from prior to December 8, 2016, was of a majority urea-formaldehyde, polyvinyl acetate, or soy resin. Commerce required documentation from a time prior to December 8, 2016, and a clear description of the ingredients within that resin to support this criterion. As discussed above, Shelter Forest demonstrated that its plywood met this criterion by providing source documentation containing a list of the ingredients used in its resin from prior to December 8, 2016. Further, Shelter Forest was able to tie the urea-formaldehyde resin to production and sales documents from 2012. We find that Shelter Forest's plywood sold prior to December 8, 2016, meets all three criteria for inquiry merchandise; therefore, requesting additional supplemental information is not necessary.

Additionally, the Court directed Commerce to address three other issues if it continues to reach an affirmative anti-circumvention finding. First, the Court disagreed with the application of the China-wide AFA-derived AD/CVD rates as the cash deposit rates, finding that Commerce should provide the Plaintiffs the opportunity to qualify for separate rates or explain why it is not

---

[101] *Id.* at 13.
[102] *See* Petitioner's Request.

permissible to do so.[103]  Second, the Court disagreed with Commerce's choice of the effective

date for suspension of liquidation, holding that the correct initiation date in this case was the date

of publication of the *Initiation Notice*,[104] not the signature date of the *Initiation Notice*.[105]  Third,

the Court instructed Commerce to consider whether notification to the ITC is required by section

781(e)(1) of the Act, in light of Commerce's previous determination not to initiate an

anticircumvention inquiry on softwood plywood because it was a "different product" from

merchandise covered by the *Orders* and fell outside the scope of the *Orders*.[106]  As discussed

*supra*, Commerce finds that Shelter Forest demonstrated that inquiry merchandise was

commercially available prior to December 8, 2016, and thus, reached negative anti-

circumvention determinations.  In light of Commerce's negative determinations, we did not

reach these remanded issues.

      Finally, the Court disagreed with Commerce's rejection of new legal argument submitted

by IKEA in its rebuttal brief.[107]  Specifically, IKEA's rebuttal brief included legal argument that

could not have been presented in its case brief because the court decision it cited had not yet

been issued.  Therefore, the Court held that Commerce abused its discretion by not accepting

IKEA's new legal argument.[108]  Accordingly, pursuant to the Court's opinion, Commerce

requested,[109] and IKEA resubmitted, its rebuttal brief.[110]  In consideration of Commerce's

revised circumvention determination, and our finding that plywood with radiata pine and/or

---

[103] *Id*. at 21-22.
[104] *See Initiation Notice*.
[105] *See Remand Opinion and Order* at 22-23.
[106] *Id*. at 26 (citing, *e.g.*, *Columbia Forest Products v. United States*, 399 F. Supp. 3d 1283, 1292–94 (CIT 2019)).
[107] *Id*. at 26; *see also* Commerce's Letter, "Rejection of Submission," dated August 12, 2019.
[108] *See Remand Opinion and Order* at 26-27.
[109] *See* Commerce's Letter, "Rebuttal Brief Request," dated March 5, 2021.
[110] *See* IKEA Rebuttal Brief.

agathis veneers is not circumventing the *Orders* (and will not be subject to the scope of the *Orders*), we find an analysis of this new argument in IKEA's rebuttal brief moot.

## C. Discussion of Petitioner's Comments on Shelter Forest's March 25 SQR

The petitioner provided comments on Shelter Forest's March 8 Submission, and subsequently, Commerce issued a supplemental questionnaire to Shelter Forest to address certain of the points that the petitioner raised.[111] Shelter Forest provided a timely response to the supplemental questionnaire,[112] and the petitioner submitted additional comments related to that submission.[113]

In the Petitioner's SQR Comments, the petitioner questioned the reliability of Shelter Forest's March 8 Submission and March 25 SQR, claiming that: (1) there were discrepancies between the glue used in products reflected in Shelter Forest's 2012 publicly-available marketing materials and Shelter Forest's reported glue composition;[114] and (2) Shelter Forest provided inadequate documentation to support its sworn statement that one of its products contained E0 glue made of a majority urea-formaldehyde.[115] According to the petitioner, these discrepancies call into question Shelter Forest's sworn declarations, questionnaire responses, and production and sales documentation, and, as a result, the petitioner maintained that Commerce should find Shelter Forest's responses in their entirety to be unreliable.

After examining the evidence on the record, we find that there are no discrepancies in Shelter Forest's March 8 Submission or March 25 SQR pertaining to the merchandise at issue

---

[111] *See* Petitioner's March 15 Comments; *see also* Commerce's Letter, "Supplemental Questionnaire," dated March 19, 2021.
[112] *See* Shelter Forest's March 25 SQR.
[113] *See* Petitioner's SQR Comments. At the time we released the draft results, the deadline for Shelter Forest to submit its response to Petitioner's SQR Comments was still outstanding. Shelter Forest submitted rebuttal NFI on April 5, 2021, and we considered this information for these final results of redetermination. For further discussion, see "Summary and Analysis of Comments from Interested Parties," below.
[114] *Id*. at 3-4.
[115] *Id*. at 5-6.

and that the documentation provided by Shelter Forest ties to the underlying sales documentation on the record. Shelter Forest submitted its NFI to clarify the composition of its E0 glue.[116] This submission included the following: (1) Shelter Forest's supplier's recipe for E0 resin from 2012, demonstrating that the glue was a majority urea-formaldehyde;[117] (2) "Materials Out-Going Form{s} for Production" showing Shelter Forest's supplier produced radiata pine plywood with E0 grade urea-formaldehyde resin;[118] (3) inspection reports that tested the emissions of the plywood and confirmed that it met the low-emissions criteria to be categorized as "E0";[119] (4) "Outbound Delivery Order" forms illustrating that this radiata pine plywood with E0 urea-formaldehyde glue was leaving the supplier's premises;[120] (5) the supplier's CARB certificate, that was valid at the time of the production;[121] (6) bills of lading that stated the merchandise was CARB-2 certified;[122] and (7) supplier invoices that said the merchandise was CARB-2 certified.[123] In Shelter Forest's Comments on Initiation, Shelter Forest provided a complete set of sales documents, including marketing materials, that were specific to the same customer and merchandise (*i.e.*, SKU 575879) as the ultimate U.S. customer and merchandise from Shelter Forest's March 8 submission.[124] This set of sales documents also included documentation to support Shelter Forest's claims, including, but not limited to: (1) a label for SKU 575859 that marked its product CARB certified with E0 glue and a pine species face; and (2) a sales contract,

---

[116] *See* Shelter Forest's March 8 Submission at Attachment page 2 ("Shelter Forest hereby provides additional factual information demonstrating, unequivocally, that the "E0" glue identified in Shelter Forest's specification sheet for SKU 575879… provided in Shelter Forest's {Comments on Initiation} at Exhibit 1, Attachment D, in fact, was comprised of urea formaldehyde").
[117] *Id*. at Exhibit 1, Attachment B.
[118] *Id*. at Exhibit 1, Attachments C and D.
[119] *Id*.
[120] *Id*.
[121] *Id*.
[122] *Id*.
[123] *Id*.
[124] *See* Shelter Forest's Comments on Initiation at Exhibit 1 Attachment D.

which tied to the CARB label by the Lot number, that referenced E0 glue and radiata pine veneers.[125] Further, Shelter Forest provided the quality control guidelines for the application of its "E0 grade formaldehyde-urea glue" that is provided to all of its suppliers, supporting the notion that Shelter Forest's suppliers used the same E0, urea-formaldehyde, glue.[126] Ultimately, while in its first argument, the petitioner speculates about discrepancies between Shelter Forest's public marketing materials (which do not appear to be directly related to the sale under examination) and Shelter Forest's explanations regarding the merchandise it produced for a specific customer, the marketing materials, sales documents, and production documents specific to the customer and product in question do not appear to contain any such discrepancies. Therefore, Commerce relied on Shelter Forest's responses for these remand results.

With respect to the second argument, Shelter Forest has provided documentation to answer Commerce's outstanding question about its E0 resin. While the merchandise in Shelter Forest's March 8 Submission was produced by a different supplier, there is nothing on the record to suggest that Shelter Forest's suppliers produced a different E0 resin that was not of a majority urea-formaldehyde. Shelter Forest's sales documentation at Attachment D of its Comments on Initiation provides a clear picture of the merchandise it sold to one of its customers (*i.e.*, radiata pine plywood that was labeled CARB-certified and produced with E0 resin), Shelter Forest's March 8 Submission provides information about Shelter Forest's E0 resin being of a majority urea-formaldehyde, and Shelter Forest's March 25 SQR indicates that Shelter Forest's suppliers

---

[125] *Id.*; *see also* Shelter Forest's March 8 Submission at Attachment, Exhibit 1 page 5 ("because of time constraints, we were only able to obtain specific documentation concerning E0 glue for the production of radiata pine, CARB certified plywood sold to {our customer} prior to 2016 for a single Chinese mill, {our supplier}. However, I note that ALL production of the radiata pine, CARB-certified plywood sold to {our customer} prior to 2016 utilized the same type of glue/resin").
[126] *See* Shelter Forest's March 25 SQR at Exhibit 1 Attachment A.

followed the same standards for E0, urea-formaldehyde, resin application.[127]  While the

petitioner alleges that Shelter Forest has provided inadequate documentation, our analysis of all

the record evidence does not support this conclusion.  As discussed above, we find that the

information provided by Shelter Forest sufficiently demonstrates that it produced inquiry

merchandise prior to December 8, 2016.  The additional concerns raised by the petitioner do not

call into question the reliability of the information already on the record.  Therefore, we find the

petitioner's arguments on this matter unpersuasive.

After considering both the petitioner's comments and Shelter Forest's supplemental

response, we find that Shelter Forest's NFI demonstrates that Shelter Forest's resin was

comprised of majority urea-formaldehyde, and supports the finding (as discussed above) that

Shelter Forest sold inquiry merchandise prior to December 6, 2018.

### III.  SUMMARY AND ANLAYSIS OF COMMENTS FROM INTERESTED PARTIES

### Comment 1:  Reliability of Shelter Forest Submissions

*Petitioner Comments*

- Commerce ignored record evidence that does not tie to, and conflicts with, Shelter

  Forest's March 8 Submission.  This information undermines Commerce's determination

  and renders the Draft Remand Results unsupported.[128]

- Shelter Forest provided documentation of its supplier's E0 glue recipe, indicating that the

  glue was made of urea, formaldehyde, enol, and tropicone, but no melamine.[129]  The sales

  of plywood that Shelter Forest identified as being produced with this glue (and the sales

---

[127] *See* Shelter Forest's Comments on Initiation at Exhibit 1 Attachment D; *see also* Shelter Forest's March 8 Submission; and Shelter Forest's March 25 SQR at Exhibit 1 Attachment A.

[128] *See* Petitioner's April 13 Comments at 4.

[129] *Id*. (citing Shelter Forest's March 8 submission at Attachments B-E).  We note that Shelter Forest's March 25 SQR at Exhibit 1 page 7 publicly disclosed the ingredients of Shelter Forest's glue.

to which Commerce found the glue documentation ties) were made with a water-boil proof (WBP) glue.[130] A urea-formaldehyde resin cannot qualify as WBP without melamine.[131] Therefore, the glue recipe and associated production documents from Shelter Forest's March 8 submission do not tie to Shelter Forest's plywood sales documents.[132]

- Shelter Forest asserts that it added melamine to the final mix of urea formaldehyde glue, which allowed the glue to "pass a boiling test for several hours," and thus, be considered WBP.[133] This assertion fails for two reasons: (1) Shelter Forest's plywood production documentation does not reference the addition of melamine and it is not reasonable to conclude that production documentation would not reference this additional ingredient;[134] and (2) Shelter Forest's explanation conflicts with its own marketing materials. Shelter Forest's contemporaneous plywood catalog indicates that its E0 glue was made of "melamine-urea formaldehyde" and could not pass a two-hour boil test.[135] If Shelter Forest's melamine urea-formaldehyde resin was WBP, as it so explained, it makes no sense for Shelter Forest to not advertise it as such (and instead include in the catalog that the glue was unable to pass a water-boil test).[136] There is no reason to believe that Shelter Forest put incorrect information about its glues in its public catalogs.[137]

---

[130] Id. (see Shelter Forest's March 25 SQR at 6 where the discussion of plywood with WBP rated glue sales was deemed public).
[131] Id. at 6.
[132] Id. at 4.
[133] Id. at 5 (citing Shelter Forest's March 25 SQR at Exhibit 1, page 4).
[134] Id.
[135] Id.
[136] Id. at 5.
[137] Id. at 6-7.

- In Shelter Forest's 2012 catalog, "fortified performance resin," which is described as phenol formaldehyde and resorcinol formaldehyde (*i.e.*, not melamine fortified urea-formaldehyde), was the only glue listed as WBP.[138]

**Commerce's Position:**

We disagree with the petitioner that the E0 glue recipe and associated documents do not tie to Shelter Forest's sales documentation. We also disagree that Shelter Forest's plywood catalog and production documents undermine Commerce's determination that Shelter Forest demonstrated the E0 glue it used in its production of inquiry merchandise was a majority urea formaldehyde glue.

With respect to the first point, the petitioner asserts that the glue recipe provided by Shelter Forest cannot be the same glue referenced in Shelter Forest's sales documentation because the recipe and production documents do not reference melamine, the ingredient that turns a majority urea-formaldehyde glue into a WBP glue. Shelter Forest's sales documentation indicates that some of its radiata pine plywood was made with an E0 glue that was melamine fortified.[139] Purchase orders show that Shelter Forest's customer requested a "WBP rated glue,"[140] and an internal spreadsheet that tracks all of Shelter Forest's plywood purchases indicates that it purchased plywood made with a "WBP rated glue."[141] Further, Shelter Forest provided the specification sheet for SKU number 575879, which shows that this SKU was made of plywood with E0 (melamine fortified) glue,[142] and the documentation for SKU number 575879 provided in Shelter Forest's Comments on Initiation ties to Shelter Forest's Q&V

---

[138] *Id*. at 5 and 7.
[139] *See* Shelter Forest's Comments on Initiation at Exhibit 1, Attachments D and G; *see also* Shelter Forest's Q&V Response at Exhibit 1, Attachment E.
[140] *See* Shelter Forest's March 25 SQR at Exhibit 1, Attachment D.
[141] *See* Shelter Forest's March 8 Submission at Exhibit 1, Attachment F.
[142] *See* Shelter Forest's Comments on Initiation at Exhibit 1, Attachment D.

Response and the documents provided for two supplier contracts in Shelter Forest's March 8 submission.[143]

However, Shelter Forest filed its March 8 Submission solely to "demonstrat{e}, unequivocally, that the 'E0' glue identified in Shelter Forest's specification sheet for SKU 575879… was comprised of urea formaldehyde," the only glue criterion relevant to the determination of whether the plywood products in question were later-developed merchandise. Shelter Forest did not characterize the documentation it provided as a complete set of production documents created in the production of inquiry merchandise.[144] When Commerce asked Shelter Forest why this documentation did not contain melamine if the plywood was indeed WBP rated, Shelter Forest explained that "{s}uch E0 production recipe documentation only concerned the chemical components of the specific E0 glue and did not purport to address all components used in the entire plywood production process."[145] Shelter Forest also explained that melamine was added to the E0 glue mixture after the glue mixture was produced:

> Shelter Forest and its partners came up with a practice of adding a small amount of melamine to the final mix of the bonding agent during {the} plywood manufacturing process … Shelter Forest suppliers produced plywood having a WBP rating by adding melamine during glue-spreading operation … What was provided in … the March 8th response was the recipe for the E0 glue only and not all materials used in {the} glue-spreading operation to produce radiata pine CARB-certified plywood.[146]

Thus, although the petitioner asserts that Shelter Forest's documentation should have referenced "melamine," there is no record evidence to support this assertion and we find Shelter

[143] *Id.* at 12 (Mr. Loe outlines how Shelter Forest's SKU 575879 ties to sales contract number SFI-SH10021, which then ties to the customer's SKU number); *see also* Shelter Forest's March 8 Submission at Exhibit 1, Attachments C and D (Shelter Forest provides production documentation for two supplier contracts, with contract numbers that can be linked to the purchase order numbers and manifest views for these customer sales in Shelter Forest's Q&V Response at Exhibit 3, Attachments B and D).
[144] *See* Shelter Forest's March 8 Submission at 2.
[145] *See* Shelter Forest's Letter, "Shelter Forest's Rebuttal Factual Information," dated April 5, 2021 (Shelter Forest's April 5 RFI) at 2.
[146] *See* Shelter Forest's March 25 SQR at 3-9.

Forest's explanation to be reasonable. In *Asocoflores*, the Court iterated that it upholds determinations supported by substantial evidence: "{s}ubstantial evidence is 'more than a mere scintilla.' It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion … Speculation, however, is not support for a finding."[147] In this case, the petitioner does not provide evidence to support its suggestion that, in order for Shelter Forest's urea-formaldehyde glue to be WBP rated, certain of the production documents provided in Shelter Forest's March 8 Submission must reference melamine. Although the petitioner characterizes the failure to reference melamine in that submission as "unreasonable," it provided no specific evidence that would call into question the reliability of the documentation supplied by Shelter Forest. Absent such evidence, we find that the petitioner's speculation does not undermine our determination that Shelter Forest used a majority urea formaldehyde glue in its production of inquiry merchandise.

In contrast, the petitioner ignores the fact that Shelter Forest provided evidence to support its assertions, including an excerpt from its 2011 quality control production manual. This manual demonstrates that, although melamine was not part of Shelter Forest's underlying glue recipe, it was added after the urea-formaldehyde glue was produced.[148] In this manual, we see that the addition of melamine occurred after the E0 glue was mixed and during the "glue-spreading" process, and that the manual referred to this melamine-fortified glue as "E0 grade Formaldehyde-Urea."[149] Thus, in examining the evidence on the record, there appears to be no basis to question the reliability of Shelter Forest's submission.[150]

---

[147] *See Asociacion Colombiana De Exportadores de Flores v. United States*, 40 F. Supp. 2d 455, 471-472 (CIT 1999) (*Asocoflores*).
[148] *See* Shelter Forest's March 25 SQR at Exhibit 1, Attachment A.
[149] *Id*.
[150] *See* Shelter Forest's March 8 Submission at Exhibit 1, Attachments B-E; *see also* Shelter Forest's March 25 SQR.

With respect to the second point, the petitioner questions the veracity of the information in Shelter Forest's March 8 Submission and March 25 SQR because of differences between those submissions and Shelter Forest's 2012 public plywood catalog.[151]  Page 33 of this catalog discusses the glue options for one brand of Shelter Forest's plywood (the brand of plywood that appears in Shelter Forest's sales documents).  The glue options include "FPR (fortified performance resin)," "eZERO," and "eONE."  On the top half of this page, FPR glue is identified as waterproof ("2 hour boil"), while the E0 glue is identified as not waterproof.  On the bottom half of the page, phenol formaldehyde and resorcinol formaldehyde are labeled as FPRs (*i.e.*, waterproof "2 hour boil"), while melamine-urea formaldehyde is identified as E0 (*i.e.*, not waterproof).  The petitioner claims that "it makes no sense that {Shelter Forest's melamine-urea formaldehyde glue} would not also be identified as waterproof" in the 2012 plywood catalog and that Commerce ignored this evidence when issuing its Draft Remand Results.[152]

First, Commerce considered all of the record evidence in making its remand redetermination.  As discussed above, Shelter Forest's 2012 public plywood catalog does not appear to be directly relevant to the plywood sold to a specific customer and the sales/production documents that tie to those specific sales.  Mr. Loe explained that Shelter Forest released this public catalog during an "evolutionary time with new standards set by CARB to lower the emotions {sic} of Formaldehyde."[153]  He also explained that Shelter Forest's "catalogs and customer marketing materials referenced many resins/glues that the market was familiar with including ones that Shelter Forest did not use and {that were} not {made} available by

[151] *See* Petitioner's Letter, "Rebuttal Comments" dated July 30, 2018 (Petitioner's Initiation Rebuttal Comments) at Exhibit 7.
[152] *See* Petitioner's April 13 Comments at 5.
[153] *See* Shelter Forest's April 5 RFI at 2.

Shelter."[154] Mr. Loe explained that the intent of the catalog was to "articulate {that} Shelter

Forest was introducing a new process that was improved, with a fortification and yet still met the

requirements for being CARB-certified."[155] Further, Shelter Forest explained that in 2012, the

addition of melamine to urea-formaldehyde resin was new and considered a "trade secret."[156]

We find Mr. Loe's explanation reasonable, and it is consistent with Commerce's understanding

of marketing materials in general, *i.e.*, information in catalogs may differ from other company

documentation, and the information in them is not necessarily as reliable as, or more reliable

than, information shown on production or sales source documentation.[157]

The fact that Shelter Forest's 2012 public plywood catalog did not contain a definite

description of Shelter Forest's products is undisputed. For example, even though the 2012 public

plywood catalog did not mention radiata pine species as one of Shelter Forest's veneer

options,[158] Commerce found that Shelter Forest sold plywood with radiata pine veneers in

2012.[159] In other words, the more specific sales and supplier documentation provided by Shelter

Forest was sufficient for Commerce to determine that Shelter Forest sold plywood with radiata

pine veneers, despite any apparent inconsistencies between those documents and the catalog.

This determination was not disputed by parties in the *Final Anti-Circ Determinations*,[160]

challenged by any party before the Court, or remanded to Commerce. In light of this, we

---

[154] *Id.*
[155] *Id.* at 3.
[156] *See* Shelter Forest's March 25 SQR at 4.
[157] We also note that, according to the first page of the catalog, Shelter Forest released the catalog in January 2012. Months after January 2012, Shelter Forest presented SKU 575879 to its customer and described the product as "new." *See* Shelter Forest's Comments on Initiation at Exhibit 1, Attachment G page 50.
[158] *See* Petitioner's Initiation Rebuttal Comments at 22 and Exhibit 7, page 15.
[159] *See* Prelim BPI Memo at 7, unchanged in final; *see also Preliminary Anti-Circ Determinations* PDM at 13 (stating, "Shelter Forest did submit certain sales documentation dated prior to December 8, 2016, indicating that it sold plywood with face and back veneers of radiata pine. This documentation includes: email correspondence, purchase orders, suppliers' invoices, SKU specification sheets, and a sworn declaration").
[160] *See Final Anti-Circ Determinations* IDM at 10-18.

continue to find that the 2012 public plywood catalog is less probative than the detailed sales and production documents that underpin our determination. Ultimately, Commerce cannot rely on speculation about the details included in Shelter Forest's promotional materials (*i.e.*, the 2012 plywood catalog). As discussed above, speculation alone does not undermine the reliability of the documents presented by Shelter Forest, and thus, Commerce finds it appropriate to rely on the sworn declarations provided by Shelter Forest, as well as the sales and production documentation the company provided that support the sworn declarations.

Based on the explanation and documentation provided by Shelter Forest, we find that the information in Shelter Forest's 2012 public plywood catalog does not necessarily undermine the sales and production documentation related to the specific products sold to one of Shelter Forest's customers. We continue to find for these final results of redetermination, that Shelter Forest's sales and production documentation are sufficient evidence to establish that Shelter Forest sold inquiry merchandise, including a majority urea formaldehyde resin, to specific customers prior to December 8, 2016.

## Comment 2:  Commerce's Negative Circumvention Finding

*Interested Party Comments*[161]

- Shelter Forest, Importers Alliance, and IKEA concur with Commerce's Draft Remand Results.

- Commerce's Draft Remand Results fully comply with the decision and remand instructions of the Court.

---

[161] *See* Shelter Forest's April 13 Comments; *see also* Importers Alliance's April 13 Comments; and IKEA's April 13 Comments.

**Commerce's Position**:

We agree with Shelter Forest, Importers Alliance, and IKEA that Commerce's Draft Remand Results are in accordance with the *Remand Opinion and Order*.  Therefore, we are not making any changes for these final results.

## IV.      FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Opinion and Order*, Commerce has collected additional information from certain respondents and conducted additional analysis of this information.  Based on our analysis, Commerce is revising its anti-circumvention determination and finds that inquiry merchandise was commercially available prior to the initiation of the underlying investigations on December 8, 2016.  Thus, we find on remand that inquiry merchandise was not later developed and is not circumventing the *Orders* on plywood from China.

5/10/2021

X ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Signed by: CHRISTIAN MARSH

Christian Marsh
Acting Assistant Secretary
 for Enforcement and Compliance