IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., *et al.*,<br><br>    Plaintiffs,<br>IKEA SUPPLY AG,<br><br>    Consolidated Plaintiff,<br>  and<br>TARACA PACIFIC, INC., *et al.*,<br><br>    Plaintiff-Intervenors,<br>  v.<br>UNITED STATES,<br><br>    Defendant,<br>  and<br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>    Defendant Intervenor. | Before: Hon. Jane A. Restani,<br>   Senior Judge<br><br>Consol. Court No. 19-00212<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information<br>Removed from Pages: 6, 9, and 10 |

## COMMENTS ON FINAL RESULTS OF REDETERMINATION

                   Timothy C. Brightbill, Esq.
                   Tessa V. Capeloto, Esq.
                   Stephanie M. Bell, Esq.
                   Elizabeth S. Lee, Esq.

                   WILEY REIN LLP
                   1776 K Street, NW
                   Washington, DC 20006
                   (202) 719-7000

                   *Counsel to the Coalition for Fair Trade*
                   *in Hardwood Plywood*

**Dated: June 4, 2021**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 1

III. COMMERCE'S REMAND DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW ............................................................................................................. 5

IV. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ............................................................................. 8, 12

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) .................................................................................................. 12

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
   497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ............................................................. 4

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
   298 F.3d 1330 (Fed. Cir. 2002) .............................................................................. 8, 12

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
   391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019) ............................................................. 14

*Target Corp. v. United States*,
   32 CIT 1016, 578 F. Supp. 2d 1369 (2008) ............................................................... 13

*Target Corp. v. United States*,
   609 F.3d 1352 (Fed. Cir. 2010) ........................................................................... 13, 14

I.  **INTRODUCTION**

On behalf of Defendant-Intervenor the Coalition for Fair Trade in Hardwood Plywood (the "Coalition") we hereby submit the following comments on the final results pursuant to Court remand issued by the Department of Commerce ("Commerce") in the above-captioned proceeding. Final Results of Redetermination Pursuant to Ct. Remand Order in *Shelter Forest International Acquisitions, et al. v. U.S.*, Consol. Ct. No. 19-0212 (May 10, 2021), ECF No. 81 ("Remand Results"). For the reasons provided below, the Coalition respectfully requests that the Court find that Commerce's remand redetermination is not supported by substantial evidence and not in accordance with law and, accordingly, remand back to the agency for further consideration.

II.  **BACKGROUND**

On November 18, 2016, the Coalition filed antidumping and countervailing duty petitions alleging that Chinese producers and exporters were importing unfairly traded hardwood plywood products into the U.S. market. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Hardwood Plywood Products from the People's Republic of China: Request for Anti-Circumvention Inquiry* (June 26, 2018) at 3 ("Coalition Request"), C.R. 1-7, P.R. 1-4.[1] Following affirmative determinations by Commerce and the International Trade Commission ("ITC"), Commerce issued antidumping and countervailing duty orders on certain hardwood plywood from China on January 4, 2018. *See id.* at 3-4; *Certain Hardwood Plywood Products*

---

[1] Documents on the confidential and public records of the underlying administrative review are identified by "C.R." and "P.R.," respectively, followed by the number assigned to the relevant document in the administrative record index filed with the court on January 29, 2020. Administrative Record (Jan. 29, 2020), ECF No. 27. Documents on the confidential and public records of the remand proceeding are identified by "C.R.R." and "P.R.R.," respectively, followed by the number assigned to the relevant document in the administrative record index filed with the court on May 24, 2021. Administrative Record (May 24, 2021), ECF No. 82.

*from the People's Republic of China*, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (am. final deter. of sales at less than fair value, and antidumping duty order); *Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) (countervailing duty order) (collectively, the "Orders"). After the imposition of the Orders, the Coalition filed a request for an anti-circumvention inquiry with respect to certain plywood products that had both a face and back veneer of certain softwood species and were suitable for interior or decorative use. Coalition Request at 2. Specifically, the Coalition detailed that plywood with a face and back veneer of radiata and/or agathis pine that has a label certifying that is it compliant with the Toxic Substances Control Act or California Air Resources Board requirements and that is made with a resin, the majority of which is comprised of urea formaldehyde, polyvinyl acetate, and/or soy ("inquiry merchandise"), was later-developed merchandise that was circumventing the Orders. *Id.* at 2, 6-7. As the Coalition explained, even while the antidumping and countervailing duty investigations were ongoing, the Coalition observed that Chinese producers and exporters began to preemptively circumvent the anticipated orders. *See id.* at 5. Specifically, as Commerce was preparing to make its preliminary affirmative determinations, the Coalition began receiving reports that U.S. importers were offering a new plywood product (*i.e.*, inquiry merchandise) that would otherwise be subject to the scope of the investigations but with both a face and back veneer of radiata pine and that importers were telling their customers that this merchandise could enter without paying duties. *Id.* During this same time, U.S. imports of plywood with both a face and back of softwood grew significantly, increasing by more than 480% between 2016 and 2017 and by 1,447% in January through April of 2018 compared to same period in 2017. *See id.* at 11-13.

Based on the information provided in the Coalition's request for a circumvention inquiry, and following the submission of comments on the request submitted by various parties, Commerce initiated an anti-circumvention inquiry. *Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 47,883, 47,886 (Dep't Commerce Sept. 21, 2018) (initiation of anti-circumvention inquiry on the antidumping duty and countervailing duty orders), P.R. 69. Following its initiation, Commerce selected the three largest exporters of inquiry merchandise as mandatory respondents and issued questionnaires to these companies: Lianyungang Yuantai International Co., Ltd. ("Yuantai"), Linyi Glary Plywood Co., Ltd. ("Glary"), and Shanghai Futuwood Trading Co., Ltd. ("Futuwood"). *See* Preliminary Decision Memorandum accompanying *Certain Hardwood Plywood Products from the People's Republic of China*, 84 Fed. Reg. 27,081 (Dep't Commerce June 11, 2019) (prelim. affirm. deter. of circumvention of the antidumping duty and countervailing duty orders) at 3, P.R. 166. After receipt of the initial questionnaires and comments from the Coalition, Commerce issued supplemental questionnaires, to which the mandatory respondents and an additional party (Shelter Forest International Acquisition Inc., Xuzhou Shelter Import & Export Co., Ltd., and Shandong Shelter Forest Products Co., Ltd. (collectively, "Shelter")) responded and on which the Coalition commented further. *See id.* at 4.

Based on a consideration of the information on the record, on June 4, 2019, Commerce issued its preliminary affirmative determination, stating that it preliminarily found that inquiry merchandise was not commercially available prior to initiation of the hardwood plywood investigations and was later-developed merchandise circumventing the Orders. *Id.* at 2. Parties submitted case and rebuttal briefs, raising various complaints with and responses to Commerce's preliminary determination. *See* Issues and Decision Memorandum accompanying *Certain*

*Hardwood Plywood Products from the People's Republic of China*, 84 Fed. Reg. 65,783 (Dep't Commerce Nov. 29, 2019) (affirm. final deter. of circumvention of the antidumping duty and countervailing duty orders) at 1-3, P.R. 240. After consideration of the submitted case and rebuttal briefs, as well as a hearing, Commerce issued its final determination on November 22, 2019, again finding that the later-developed merchandise was circumventing the Orders. *Id.* In doing so, Commerce addressed the various arguments raised by the parties and concluded that the record continued to support an affirmative circumvention determination. *Id.* at 1.

Following the issuance of Commerce's final determination, multiple parties raised various claims before this Court, arguing that the agency's determination was unsupported by substantial evidence and otherwise not in accordance with law. *See Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1392 (Ct. Int'l Trade 2021). Upon consideration of the parties' arguments, the Court remanded to Commerce to consider various aspects of its determination, finding that, *inter alia*, the agency's final affirmative determination was unsupported by substantial evidence and that Commerce unreasonably rejected a submission made by Shelter after the preliminary determination. *See* Remand Results at 2. On remand, Commerce decided to accept Shelter's post-preliminary determination submission and also issued a supplemental questionnaire to Shelter regarding this submission. *Id.* at 4. Based on its reconsideration of the record, including the additional information provided by Shelter during the remand proceeding, Commerce issued a draft remand revising its prior determination and finding that inquiry merchandise was not later developed because it was commercially available prior to the investigation. *Id.* at 4-5. This conclusion was based on Commerce's finding that Shelter had provided sufficient documentation demonstrating the composition of the resin it used for the products presented as inquiry merchandise sold before the investigation. *Id.* at 11-14. The

Coalition submitted comments in opposition to the draft remand, outlining deficiencies and inconsistencies in the information Shelter had provided and on which Commerce relied in making its determination. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Comments on Draft Results of Redetermination* (Apr. 13, 2021) at 3-7 ("Coalition Comments on Draft Remand"), C.R.R. 15, P.R.R. 45. As the Coalition explained, these issues rendered Shelter's documentation unreliable, such that Commerce cannot rely on it to conclude that inquiry merchandise was commercially available. *Id.* However, for its final remand determination, Commerce continued to rely on Shelter's information and find that inquiry merchandise was commercially available prior to the investigation and, therefore, was not circumventing the orders. Remand Results at 14.

### III.   COMMERCE'S REMAND DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW

Commerce and this Court are headed toward a decision in this case that defies a wealth of evidence about what actually occurred in the hardwood plywood market. There is no doubt whatsoever that even as the antidumping and countervailing duty investigations on hardwood plywood were occurring, Chinese respondents decided to begin avoiding any antidumping and countervailing duties by rapidly switching to a new product – decorative plywood made with radiata or agathis pine. The shift to this product was dramatic and is undeniable. As the Coalition outlined in its request for a circumvention inquiry, imports of Chinese plywood with softwood face and back veneers skyrocketed following the filing of the petitions in the underlying investigation. Coalition Request at 11. In fact, in January through April 2018 alone (the most recent data available at the time of filing the circumvention request), imports of Chinese softwood faced plywood increased by 1,447% compared to the same period in 2017. *Id.* During

the same time as this massive surge in imports, members of the Coalition were first made aware of a new product that was being offered as a substitute for hardwood plywood covered by the investigations. *Id.* at 22-25.

In support, in its circumvention request, the Coalition submitted substantial information demonstrating that inquiry merchandise was not commercially available prior to the investigations. *See id.* This included declarations from multiple Coalition members and their sales representatives, as well as the President of the Decorative Hardwoods Association, confirming that they had not heard of or seen inquiry merchandise prior to the filing of the petitions. *Id.* at 22-23. The Coalition also submitted extensive documentation from the Coalition members and their sales representatives confirming that they never saw and had no knowledge of inquiry merchandise in the market until after initiation of the investigations. *Id.* at 23. This also included [









]. *Id.* at Exhibit 2. Notably, this was [



]. Specifically, Shelter's 2016 catalog states: "Plywood is generally made of softwood veneers – Douglas fir, spruce or pine – and is typically used for construction and industrial purposes. TigerPLY™ is engineered *with only hardwood veneers . . . .*" Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Hardwood Plywood Products from the*

*People's Republic of China: Rebuttal Comments* (July 30, 2018) at Exhibit 8 ("Coalition July 30 Comments"), C.R. 32-45, P.R. 50-59 (emphasis added).

Based on this information, as well as a wealth of other documentation provided by the Coalition, Commerce properly and reasonably found that these products were not commercially available prior to the start of the hardwood plywood investigations in its original determination. And they were not. This was clear circumvention, and so Commerce properly expanded the order to include these newly developed products.

Unfortunately, the Court's decision – and now Commerce's remand determination – condones this plain circumvention by the Chinese industry. The result will be to seriously undermine the antidumping and countervailing duty orders and the relief afforded to the domestic industry, by allowing companies like Shelter to ship potentially unlimited amounts of decorative softwood-faced product in place of hardwood plywood.

With this in mind, we turn to the remand determination. In its determination, Commerce concluded that Shelter provided sufficient information regarding the composition of the glue used such that it was considered to have demonstrated that it produced inquiry merchandise sold prior to the investigation. Remand Determination at 10-14. On this basis, Commerce concluded that inquiry merchandise was commercially available prior to the investigation and, therefore, that a negative circumvention determination was warranted. *Id.* As discussed in detail below, this determination is incorrect. Even if inquiry merchandise was available at all, it was not "commercially available" for the purpose of later developed merchandise provision. Moreover, the determination fails to grapple with information that directly undermines the conclusions reached by Commerce. Without adequately addressing facts that detract from the agency's conclusion in a meaningful way, Commerce's conclusion cannot be considered to be supported

by substantial evidence and otherwise in accordance with law. *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) ("To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984))). As such, because Commerce's conclusions cannot be reconciled with record evidence, the Coalition respectfully requests that the Court remand Commerce's determination for further consideration.

In explaining its determination in the draft remand results, Commerce stated that the information provided by Shelter "provide{d} additional clarity" regarding the glue used, showing that the glue was majority urea-formaldehyde, and that it was able to tie this information to the sales documentation provided elsewhere by Shelter. Remand Results at 11-12. In particular, Commerce pointed to documentation regarding Shelter's supplier's glue mixing process, production documentation from its supplier, and a "plywood inspection report." *Id.* at 12. Commerce further stated that contract and container numbers allowed it to tie these documents to the sales documents Shelter had provided elsewhere. *Id.* Based on this information, Commerce concluded that Shelter demonstrated that it produced inquiry merchandise prior to the investigation and that, consequently, such merchandise was not later developed or circumventing the orders. *Id.* at 13-14.

As the Coalition highlighted in its comments on the draft remand results, there are two main elements of the record that undermine Commerce's determination and that the agency has failed to sufficiently address. First, the documentation that Shelter provided regarding its glue provides no indication that Shelter's supplier provided manufactured plywood with melamine-urea formaldehyde, despite Shelter's insistence that its products were made with

urea-formaldehyde with added melamine *See id.* at 23-24; Coalition Comments on Draft Remand at 4-5. In other words, there was a gap in Shelter's documentation that undermines the conclusion that the glue documentation ties to the sales documentation. Second, Shelter's claims regarding the resin used, and characteristics of that resin, directly conflict with other information on the record. Here, too, this contradictory information undermines Commerce's conclusion that Shelter has sufficiently demonstrated the resin used. As Commerce failed to adequately address these issues and sufficiently explain why they do not undermine its conclusion, the agency's determination is not supported by substantial evidence.

With respect to the first issue, Shelter's glue documentation relates to plywood [

]. Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Sec'y Commerce, re: *Shelter Forest's Response to Department Request: Court Remand for Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders, Certain Hardwood Plywood Products from China* (Mar. 8, 2021) at Attachments B-F ("Shelter March 8 Submission"), C.R.R. 1, P.R.R. 6. This documentation shows that the glue used was [

]. *Id.* at Attachment B. Shelter's documentation also shows that the plywood [

]. *Id.* at Attachment F. As Shelter has stated, urea-formaldehyde glue is not waterproof. *See* Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Sec'y Commerce, re: *Shelter Forest's Supplemental Questionnaire Response: Court Remand for Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders, Certain Hardwood Plywood Products from China* (Mar. 25, 2021) at 3 ("Shelter March 25 Submission"), C.R.R. 11-12, P.R.R. 29-30. While Shelter has also stated that plywood made with urea-formaldehyde resin can pass a "boiling test"

by "adding a small amount of melamine to the final mix of the final bonding agent during plywood assembly{,}" *id.*, [

]. *See* Shelter March 8 Submission at Attachment C. Thus, there is a gap in the information provided by Shelter between [                                                                                               ].

In response, Commerce states that there is nothing to suggest that Shelter's documentation needed to reference melamine and asserts that the Coalition "ignores" Shelter's 2011 quality control production manual that shows that melamine is added after the urea-formaldehyde glue is produced. *See* Remand Result at 27-28. This response fails to adequately address the gap in the record. If, as Shelter states, the addition of melamine provided the plywood with characteristics that did not otherwise exist (*i.e.*, a WBP rating) and if that characteristic is [                                          ], it is reasonable to expect that there would be some documentation [                                          ] demonstrating that melamine has been added. In fact, Shelter's documentation indicates that [

]. Shelter March 25 Submission at Attachment A. This is also not resolved by the fact that melamine is apparently added after the glue is initially mixed. *See* Remand Results at 26-27. Given that [

], Commerce has not explained how it is reasonable or supported to conclude that [

]. Without

sufficiently addressing this gap in the record, Commerce's conclusion that Shelter provided adequate records demonstrating the glue used is not supported.

With respect to the second issue, Commerce has failed to grapple with the fact that information on the record directly contradicts with the information it relies upon to make its determination. Specifically, as noted above, the sales documentation provided by Shelter and relied on by Commerce shows that the product at issue was manufactured with a "WBP rated glue," and Shelter claims that, by adding melamine to the urea-formaldehyde glue, the resulting glue has a WBP rating. *See id.* at 25-26. However, as the Coalition noted in its comments on the draft remand, Shelter's contemporaneous, public catalogue directly contradicts this. Coalition Comments on Draft Remand at 5. In particular, Shelter's 2012 catalog expressly identifies melamine-urea formaldehyde (*i.e.*, urea-formaldehyde with added melamine) as one of its glue options and states that this glue *is not considered waterproof.* Coalition July 30 Comments at Exhibit 7. Moreover, the only glues that Shelter's catalog does identify as waterproof are phenol formaldehyde and resorcinol formaldehyde, *id.*, and plywood made with such glues do not meet the definition of inquiry merchandise. In other words, the information Shelter has provided here directly conflicts with its contemporaneous business documents, raising significant questions about the veracity of Shelter's documentation.

In response to the Coalition's comments, Commerce points to Shelter's statement that its catalogues "referenced many resins/glues that the market was familiar with including ones that Shelter Forest did not use and {that were} not {made} available by Shelter" and that, in 2012, Shelter's addition of melamine to its urea-formaldehyde glue "was new and considered a 'trade secret.'" Remand Results at 28-29. Based on this, Commerce disregarded the contradictory information contained in Shelter's catalog. *Id.* This reasoning fails to grapple with the underlying

issue and only serves to underscore the inherent contradictions in Shelter's documentation. For example, in listing glue types, Shelter's catalog expressly identifies the listed glues as "TigerPLY Glue Options." Coalition July 30 Comments at Exhibit 7. This directly contradicts and cannot be reconciled with the claim that the catalog can be disregarded because it identifies glues that Shelter did not use or make available. *See* Remand Results at 28-29. Similarly, in listing "TigerPLY Glue Options," Shelter specifically identifies "Melamine-Urea Formaldehyde." Coalition July 30 Comments at Exhibit 7. This directly contradicts and cannot be reconciled with the claim that Shelter's addition of melamine to its urea formaldehyde was a "trade secret." *See* Remand Results at 28-29. Commerce's dismissal of this information based on its conclusion that marketing materials are "not necessarily as reliable as, or more reliable than, information shown on production or sales source documentation{,}" fails to address these inherent contradictions. *See id.* at 29. Notably, this is not an issue of Shelter providing information that is not included in or that goes beyond what is included in the catalog. *See id.* Instead, the information in the catalog directly contradicts Shelter's statements. As such, Commerce has not explained why it is reasonable or supported to rely on these statements in light of the record as a whole.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ta Chen Stainless Steel Pipe*, 298 F.3d at 1335 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A determination as to whether substantial evidence exists must be based on the record as a whole, taking into consideration both supportive evidence "as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Id.* (quoting *Atl. Sugar*, 744 F.2d at 1562). In its remand determination, Commerce has not adequately considered information that detracts from its conclusion or sufficiently

explained how its determination is supported notwithstanding this information. Consequently, Commerce's determination that Shelter demonstrated that it produced inquiry merchandise should not be considered to be supported by substantial evidence.

Finally, Commerce's acceptance of Shelter's contradictory statements and, in particular, the contention that it produced and sold inquiry merchandise notwithstanding that these products conflict with the characteristics identified in Shelter's publicly available materials, undermines Commerce's overall conclusion that inquiry merchandise should be considered commercially available prior to the investigation and therefore not later-developed merchandise. Notably, in examining Commerce's commercial availability standard, the Court recognized that the agency's rational was based on the concept that a "product's actual presence in the market at the time of the LTFV investigation is a necessary predicate of its inclusion or exclusion from the scope of an antidumping duty order." *Target Corp. v. United States*, 32 CIT 1016, 1021, 578 F. Supp. 2d 1369, 1375 (2008) (quoting Issues and Decision Memorandum accompanying *Later-Developed Merchandise Anticircumvention Inquiry of the Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China*, 71 Fed. Reg. 59,075 (Dep't Commerce Oct. 6, 2006) (affirm. final deter. of circumvention of the antidumping duty order) at 23); *Target Corp. v. United States*, 609 F.3d 1352, 1359 (Fed. Cir. 2010) (finding that the Court of International Trade properly found Commerce's commercial availability test to be reasonable in part based on the reasoning that a market must have been in the market to be included or excluded from a scope). This is consistent with the Court's recognition that merchandise that would otherwise be excluded from an order can be reached via the later-developed merchandise provision because a petitioner cannot have been found to have intentionally excluded certain merchandise from the scope if, when the scope was drafted, the merchandise did not yet exist in the commercial

market. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1311 (Ct. Int'l Trade 2019); *Target Corp.*, 609 F.3d at 1363 ("Indeed, as later-developed merchandise was not present in the market at the time of the LTFV investigation the *Candles Antidumping Order* could not have addressed mixed-wax candles.").

The same reasoning extends here. If Shelter was in fact producing inquiry merchandise but the actual characteristics of these goods were considered a trade secret and Shelter's public information actively promoted characteristics that conflicted with the true nature of these products, it is not reasonable to consider such merchandise *commercially available* for the purpose of later developed merchandise provision. If Shelter was obscuring the true nature of the products it was producing, the Coalition would have no reason to know that these products existed and, therefore, no reason to consider their inclusion in the scope. In other words, even if these products may have technically existed, if their exitance was obscured from the public via Shelter's own public statements, then there is no basis to conclude that the Coalition knew or should have known that they existed – let alone that they were "commercially available". Indeed, this is consistent with the information the Coalition submitted in its circumvention inquiry request, outlining its understanding that inquiry merchandise was not present in the market until after the investigation was initiated. Coalition Request at 22-25. Thus, based on Commerce's own basis for rejecting the inherent contradictions in the record, it is not reasonable for Commerce or this Court to conclude that the inquiry merchandise was commercially available. It was not. Accordingly, Commerce's determination in the remand results that inquiry merchandise was commercially available is not supported by substantial evidence and otherwise in accordance with law.

## IV. CONCLUSION

For the foregoing reasons, the Coalition respectfully requests that the Court find that Commerce's remand determination is not supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Tessa V. Capeloto, Esq.
Stephanie M. Bell, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

Dated: June 4, 2021

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Comments on Final Results of Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 4,219 words.

 /s/ *Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

Coalition for Fair Trade in Hardwood Plywood
(Representative Of)

June 4, 2021
(Date)