## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE E. RESTANI, SENIOR JUDGE

_____
                                                              )
SHELTER FOREST INTERNATIONAL                )
ACQUISITION, INC., *ET AL*.,                              )
                                                              )
                                  Plaintiffs,              )
                                                              )
and                                                         )
TARACA PACIFIC, INC., *ET AL*.,                       )
                                                              )
and                                                         )
SHANGHAI FUTUWOOD                             )
TRADING CO., LTD., *ET AL*.,                          )
                                                              )
                                  Plaintiff-Intervenors,  )
                     v.                                     )
                                                              )
                                                              )         Consol. Court No. 19-00212
UNITED STATES,                                     )
                                  Defendant,              )
                                                              )
and                                                         )
COALITION OF FAIR TRADE IN HARDWOOD  )
PLYWOOD,                                             )
                                  Defendant-Intervenor.  )
                                                              )
_____)

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
Savannah Rose Maxwell
Attorney
U.S. Department of Commerce
Office of the Chief Counsel For Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-3748
Fax: (202) 482-4912
Email: Savannah.Maxwell@trade.gov

SONIA M. ORFIELD
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 353-0534
Fax: (202) 514-7965
Email: Sonia.M.Orfield@usdoj.gov

June 16, 2021

## <u>TABLE OF CONTENTS</u>

BACKGROUND ..................................................................................................... 2

    I.     Administrative Determination Under Review ....................................................... 2

    II.    The Court's Remand Order ................................................................................ 4

    III.   Commerce's Remand Redetermination ................................................................ 6

ARGUMENT ........................................................................................................ 8

    I.     Standard Of Review ........................................................................................ 8

    II.    Commerce's Determination That Shelter Forest's Information
          Supports That Its Merchandise Is Made With Majority Urea
          Formaldehyde Glue Is Consistent With The Remand Order And
          Based Upon Substantial Evidence ...................................................................... 9

    III.   The Coalition's Arguments Do Not Undermine Commerce's Reliance
          on Shelter Forest's New Factual Information Demonstrating It's E0
          Glue is a Majority Urea Formaldehyde Glue ...................................................... 10

CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITES

**Cases**                                                                 **Page(s)**

*Al Tech Specialty Steel Corp. v. United States,*
   366 F. Supp. 2d 1236 (Ct. Int'l Trade 2005) ..................................................... 9

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ...........................................................................8, 10

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ............................................................................. 8

*CP Kelco U.S., Inc. v. United States,*
   949 F.3d 1348 (Fed. Cir. 2020) .......................................................17

*I.N.S. v. Elias-Zacarias,*
   502 U.S. 478 (1992) ............................................................................. 8

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................ 8

*Mitsubishi Heavy Indus., Ltd. v. United States,*
   275 F.3d 1056 (Fed. Cir. 2001) ........................................................... 8

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
   463 U.S. 29 (1983) ..........................................................................17

*Roses Inc. v United States,*
   774 F. Supp. 1376 (Ct. Int'l Trade 1992) ............................................. 9

*Shelter Forest International Acquisition, Inc. v. United States,*
   497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ...............................................*passim*

*Sunpreme Inc. v. United States,*
   946 F.3d 1300 (Fed. Cir. 2020) .......................................................17

**Statutes**

19 U.S.C. §1677j .............................................................................2, 4

**Administrative Determinations**

*Certain Hardwood Plywood Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*
   84 Fed. Reg. 65, 783 (Dep't of Commerce Nov. 29, 2019) .................................... 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE E. RESTANI, SENIOR JUDGE
_____
                                                              )
SHELTER FOREST INTERNATIONAL                )
ACQUISITION, INC., *ET AL.*,                            )
                                                              )
                              Plaintiffs,                   )
                                                              )
and                                                          )
TARACA PACIFIC, INC., *ET AL.*,                     )
                                                              )
and                                                          )
SHANGHAI FUTUWOOD                               )
TRADING CO., LTD., *ET AL.*,                         )
                                                              )
                              Plaintiff-Intervenors,    )
              v.                                             )
                                                              )
                                                              )        Consol. Court No. 19-00212
UNITED STATES,                                         )
                              Defendant,                  )
                                                              )
and                                                          )
COALITION OF FAIR TRADE IN HARDWOOD  )
PLYWOOD,                                                 )
                              Defendant-Intervenor.    )
                                                              )
_____)

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by
Defendant-intervenor, the Coalition in Fair Trade in Hardwood Plywood (Coalition).  *See*
Coalition Cmts., June 4, 2021, ECF No. 85 & 86.  The Coalition's comments and our response
concern the Department of Commerce's final remand redetermination, *see Final Results of*
*Remand Pursuant to Court Remand,* May 10, 2021 (*Remand Redetermination*), ECF No. 81,
issued pursuant to this Court's opinion and remand order, *Shelter Forest International*
*Acquisition, Inc. v. United States,* 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) (*Remand Order*),

1

ECF No. 77. As explained below, the Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has fully complied with the Court's remand order, and because the remand redetermination is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I.   Administrative Determination Under Review

The administrative determination under review is *Certain Hardwood Plywood Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 65,783 (Dep't of Commerce Nov. 29, 2019) (aff. final det. of circumvention of the antidumping and countervailing duty orders) (P.R. 245) (Final Determination), and accompanying Issues and Decision Memorandum (P.R. 240).

As part of its circumvention inquiry, Commerce sought to determine whether inquiry merchandise is later-developed merchandise circumventing the orders on hardwood plywood from China, pursuant to 19 U.S.C. §1677j(d). Commerce examined whether inquiry merchandise met the following requirements: (1) certain plywood with face and back veneers made of radiata and/or agathis pine, (2) "[h]as a Toxic Substances Control Act (TSCA) or California Air Resources Board (CARB) label certifying that it is compliant with TSCA/CARB requirements; and (3) is made with a resin, the majority of which is comprised of one or more of the following three product types—urea formaldehyde, polyvinyl acetate, and/or soy." Issues and Decision Memorandum, P.R. 240, at 9-20.

Following the preliminary determination and after the deadline for submission of unsolicited new factual information, Shelter Forest International Acquisition (Shelter Forest) filed a letter including new information regarding the composition of its glue. *See* Shelter

2

Forest's Letter, "Regarding Response to DOC Questions RE: E0 Glue," dated July 3, 2019 (P.R. 183). Commerce rejected this information as untimely-filed new factual information. "Rejection of Submission," dated July 10, 2019 (P.R. 190). Shelter Forest then requested that Commerce solicit new information from it, which Commerce declined to do. "Request for Commerce to Solicit Necessary New Factual Information," (July 11, 2019) at 2-3; "Denial of Request to Solicit New Factual Information" (July 17, 2019) (P.R. 199, C.R. 136).

In the final anticircumvention determination, Commerce analyzed the evidence that each respondent had provided for each of the three prongs of inquiry merchandise. With respect to mandatory respondent Lianyungang Yuantai International Trade Co. (Yuantai), Commerce found that Yuantai did not demonstrate that it produced or sold plywood with outer veneers of radiata pine prior to December 8, 2016. IDM at 25. To support its claim that it sold plywood with both outer veneers of radiata pine, Yuantai provided CBP entry forms. These entry forms, however, were for entries of plywood with only one veneer of softwood. *See* IDM at 25. Commerce determined that none of the other sales documents provided by Yuantai indicated that both face and back veneers were comprised of radiata pine. *See* Memorandum, "Business Proprietary Information Memo for Issues and Decision Memorandum on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China," dated Nov. 22, 2019 at Notes 2, 3, and 4. Commerce concluded that Yuantai's purchase contract with its plywood producer was unreliable due to a translation error. IDM at 25. Commerce also determined that Yuantai did not demonstrate its plywood was labeled CARB/TSCA compliant and that it provided no reliable evidence of producing or selling plywood made with a majority urea-formaldehyde resin. *Id*. at 26. Yuantai provided its

3

supplier's CARB certification, but provided no evidence to demonstrate a specific product was labeled CARB compliant.

Finally, Commerce found that Shelter Forest demonstrated that it sold plywood with radiata pine veneers that was labeled CARB certified, but that it did not demonstrate that the glue used to produce that merchandise was majority urea formaldehyde. IDM at 24-25. Specifically, Commerce explained that the record lacked sufficient support for finding "E0" or "eZero" glue, the glue used in Shelter Forest's radiata pine plywood, was made of majority urea-formaldehyde. *Id*.

As a result, Commerce determined that no party sold merchandise that met all three prongs of inquiry merchandise prior to the initiation of the investigation on hardwood plywood from China. Commerce determined: (1) the inquiry merchandise was not commercially available at the time of the initiation of the investigations of the orders; (2) inquiry merchandise was similar to subject merchandise such that it should be included within the scope of the orders, and (3) the merchandise under consideration did not incorporate a significant technological advance or alteration of an earlier product requiring Commerce to notify the International Trade Commission (ITC) under 19 U.S.C. §1677j(e)(1)(C). Issues and Decision Memorandum, P.R. 240, at 39-40. Accordingly, Commerce determined that inquiry merchandise constituted later-developed merchandise that is circumventing the orders on hardwood plywood from China, within the meaning of 19 U.S.C. § 1677j(d).

Plaintiffs challenged Commerce's affirmative anticircumvention determination.

## II.      The Court's Remand Order

On February 18, 2021, this Court remanded Commerce's final affirmative anticircumvention determination, finding that Commerce's affirmative circumvention

determination was unsupported by substantial evidence. Specifically, the Court concluded that: (1) Commerce unreasonably rejected Shelter Forest's July 3, 2019 submission; (2) the application of the adverse facts available (AFA)-derived China-wide rate to producers/exporters of inquiry merchandise is inconsistent with the purpose of 19 U.S.C. § 1667j(d); (3) the signature date is not the correct effective date for the date of initiation of the inquiry; (4) Commerce must further assess whether the ITC should be notified of an affirmative determination; and (5) Commerce should not have rejected IKEA Supply AG (IKEA)'s rebuttal brief. *Remand Order*, 497 F. Supp. 3d at 1399-1404.

With respect to Commerce's treatment of Shelter Forest's July 3 submission of new factual information, the Court held that, where possible, Commerce should accept voluntary participation by respondents in a later-developed merchandise inquiry to achieve an accurate result. The Court found that Commerce's rejection of Shelter Forest's letter was inconsistent with Commerce's duty to conduct a fair and accurate examination of the market. The Court noted that Shelter Forest was the only respondent that voluntarily participated in the inquiry and its documentation had met two of the three criteria for inquiry merchandise. *See Remand Order*, 497 F. Supp. 3d at 1403. The Court further held that Commerce abused its discretion by rejecting Shelter Forest's July 3 letter. *Id*. at 1398.

The Court directed Commerce to: (1) consider whether it may accept evidence, other than labels, that indicates TSCA or CARB product compliance or otherwise explain why evidence of actual labels is required for its assessment; (2) explain what evidence it specifically required with regard to the resin formulation used to produce inquiry merchandise and why that evidence is required, identify any deficiencies in respondents' evidence, and, to the extent necessary, (3) provide Yuantai the opportunity to correct or explain the translation error in its

purchase contract and either consider the document or explain why the error makes the entire document unreliable; (4) consider Shelter Forest's July 3 submission, notify Shelter Forest of any deficiencies in it, and allow Shelter Forest to correct or explain those deficiencies; and (5) allow IKEA to refile its rebuttal brief. *See Remand Order*, 497 F. Supp. 3d at 1398-1406.

### III.   Commerce's Remand Redetermination

On remand, Commerce reopened the record, requested, and received, Shelter Forest's July 3 submission of new factual information,[1] IKEA's rebuttal brief, and Yuantai's revised English translation of its purchase contract and explanation of the errors in the originally-submitted document. Shelter Forest's March 8 submission included additional information relating to the composition of its E0 glue, including a declaration from Shelter Forest's president, averring that "E0 glue is primarily made from urea formaldehyde{.}" *See* Shelter Forest's Letter, "Shelter Forest's Response to Department Request," dated March 8, 2021 (Shelter Forest's March 8 submission), P.R.R. 6, C.R.R. 1.

Commerce also issued a supplemental questionnaire to Shelter Forest regarding its new factual information submission, to which Shelter Forest timely responded. *See* Shelter Forest's Letter, "Shelter Forest's Supplemental Questionnaire Response," dated March 25, 2021, P.R.R. 29-30, C.R.R. 11-12. The Coalition commented on Shelter Forest's supplemental questionnaire response. *See* Coalition's Letter, "Comments on Shelter Supplemental Questionnaire Response," dated March 31, 2021, P.R.R. 35, C.R.R. 13. Commerce reevaluated the record evidence and reviewed all comments from interested parties prior to releasing its draft remand.

On April 5, 2021, Commerce released the draft remand results and established the deadline for interested parties to submit comments. *Draft Results of Remand Redetermination*,

---

[1] *See* Shelter Forest's Letter, "Shelter Forest's Response to Department Request," dated March 8, 2021 (Shelter Forest's March 8 submission) P.R.R. 6.

P.R.R. 36.  The Coalition,  Shelter Forest, Importers Alliance,  and IKEA each timely  submitted comments on the draft remand results.  *See* The Coalition's  Letter, "Comments on Draft Results of Redetermination," dated April 13, 2021 (Coalition's  April 13 Comments),  P.R.R 45; *see also* Shelter Forest's Letter, "Shelter Forest's Comments on Department Draft Results of Redetermination  Pursuant to Court Remand," dated April 13, 2021 (Shelter Forest's April 13 Comments), P.R.R. 42; Importers Alliance's  Letter, "Comments  on Draft Remand Redetermination,"  dated April 13, 2021 (Importers Alliance's  April 13 Comments), P.R.R 43; and IKEA's Letter, "IKEA Supply  AG's Comments on Draft Remand Redetermination  in Cons. Court No. 19-00212,  Slip  Op. 21-19," dated April 13, 2021 (IKEA's April 13 Comments), P.R.R. 44.

On May 10, 2021, Commerce issued its remand redetermination.  Commerce determined that Shelter Forest's new factual information  demonstrated that the glue it used in its production of plywood was majority  urea formaldehyde.  *Remand Redetermination* at 22-23.  Specifically, Commerce relied on documentation  including  a sworn declaration  regarding the content of Shelter Forest's E0 glue.  *See* March 8 submission  Exhibit  1 at Attachment A, P.R.R. 6, C.R.R. 1.  Commerce also relied on documentation  from plywood suppliers for Shelter Forest dated prior to the initiation  of the investigation  explaining  its E0 glue production.  *Id*. at Exhibit  1 Attachment B, P.R.R. 6, C.R.R. 1.  In addition,  Commerce relied on Shelter Forest's sales documentation,  its supplier's production  documentation,  and a plywood  inspection report.  *Id*. at Exhibit  1, Attachments C and D.  Therefore, Commerce determined Shelter Forest demonstrated that, prior to December 8, 2016, it sold merchandise that was CARB-certified, made of radiata pine, and used a majority  urea formaldehyde  glue, which satisfied the three requirements of inquiry  merchandise.  *Id*.  Thus, Commerce concluded that inquiry  merchandise was not later-

developed merchandise because it was commercially available prior to the initiation of the less-than-fair-value and countervailing duty investigations. *Id.*

Accordingly, Commerce revised its circumvention determination, finding inquiry merchandise was not circumventing the *Orders* covering hardwood plywood from China. *Remand Redetermination* at 22. Because of this negative determination, Commerce determined it was unnecessary to address the remaining issues raised by the Court. *Id.* at 16, 20.

## ARGUMENT

## I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted).

A party challenging Commerce's factual determinations under the substantial evidence standard has "chosen a course with a high barrier to reversal." *Mitsubishi Heavy Indus., Ltd. v. United States,* 275 F.3d 1056, 1060 (Fed. Cir. 2001). Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias,*

502 U.S. 478, 483-84 (1992).

II.   **Commerce's Determination That Shelter Forest's Information Supports That Its Merchandise Is Made With Majority Urea Formaldehyde Glue Is Consistent With The Remand Order And Based Upon Substantial Evidence**

The Court directed Commerce to consider Shelter Forest's July 3 letter, notify Shelter Forest of any deficiencies, and provide Shelter Forest with an opportunity to correct or explain those deficiencies. *See Remand Order*, 497 F. Supp. 3d at 1401. On remand, Commerce complied with the order by accepting Shelter Forest's new factual information and providing Shelter Forest with the opportunity to correct and clarify any deficiencies. Based on the new factual information, Commerce determined that Shelter Forest's E0 glue, which it used in its production of plywood, was made of majority urea formaldehyde. *Remand Redetermination* at 22. And therefore, Commerce determined that Shelter Forest sold inquiry merchandise prior to the initiation of the investigation, and thus reversed its circumvention determination.

Accordingly, the Court should uphold Commerce's negative circumvention determination because it is supported by substantial evidence, consistent with the Court's *Remand Order*, and otherwise in accordance with law. With respect to the remaining issues remanded by the Court, consideration of such issues was mooted by Commerce's determination that circumvention did not occur. *Roses Inc. v United States*, 774 F. Supp. 1376, 1381 (Ct. Int'l Trade 1992) (acknowledging that to force Commerce to make a moot calculation "would impose a needless expense and waste the agency's time."); *see also Al Tech Specialty Steel Corp. v. United States*, 366 F. Supp. 2d 1236, 1243 (Ct. Int'l Trade 2005) (affirming remand redetermination where the result of reconsideration of two of those issues resulted in a de minimis countervailing duty rate, rendering remaining remanded issues moot). Accordingly, Commerce substantially complied with the remand order.

**III.    The Coalition's Arguments Do Not Undermine Commerce's Reliance on Shelter Forest's New Factual Information Demonstrating It's E0 Glue is a Majority Urea Formaldehyde Glue**

The Coalition argues that Commerce should not have relied on Shelter Forest's new factual information.  The Coalition does not dispute that Shelter Forest's new factual information demonstrates that it used a majority urea formaldehyde glue in its production of the relevant plywood.  Instead, relying upon two unsubstantiated assertions, the Coalition argues that: (1) Commerce should not have relied on Shelter Forest's March 8 Submission or its March 25 supplemental questionnaire response because there is a "gap" in the record; and (2) Commerce failed to address record evidence that detracts from its conclusion.  Coalition Cmts. at Coalition Cmts. at 7-14.  However, Commerce fully examined the record and found no "gap" in the record, nor any evidence that undermined its reliance on Shelter Forest's new factual information submissions.  *Remand Redetermination* at 24-28.

As an initial matter, the Coalition's arguments fail to acknowledge the substantial evidence standard.  Although "{s}ubstantial evidence is more than a mere scintilla," it does not require overwhelming evidence.  Rather, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison*, 305 U.S. at 229.  The detailed evidence relied upon by Commerce more than meets that standard.  Specifically, Commerce examined the sworn declaration from Mr. Loe, who averred that Shelter Forest's E0 glue is "primarily made from urea-formaldehyde."  *See* March 8 submission Exhibit 1 at Attachment A, P.R.R. 6, C.R.R. 1.  Commerce also examined documentation from one of Shelter Forest's plywood suppliers, explaining its E0 glue production through radiata-veneer plywood production and testing.  *Id*. at Exhibit 1 Attachment B, P.R.R. 6, C.R.R. 1.  The supplier's documentation of its method for making E0 glue was dated 2012, prior to the initiation of the

investigation. *Id.* Commerce determined that the supplier's method and process for mixing E0 grade urea-formaldehyde glue demonstrated that the supplier's glue was 98 percent urea-formaldehyde. *Remand Redetermination* at 11; Shelter Forest's March 8 submission at Exhibit 1, Attachment B, P.R.R 6, C.R.R. 1.

Commerce also examined Shelter Forest's sales documentation and its supplier's production documentation from two purchase contracts from 2012 with the same supplier. *Id.* at Exhibit 1, Attachments C and D. These sales and production documents consistently referenced "E0," "E0 Grade," "urea formaldehyde glue," "urea-formaldehyde resin," and "radiata pine plywood." *Id.* Shelter Forest also provided a plywood inspection report, showing that the plywood for these specific contracts was made with urea-formaldehyde resin. *Id.* Using the contract numbers, container numbers from the bills of lading, and documentation from previous submissions, Commerce determined that Shelter Forest linked all of these sales to the production documents. *Remand Redetermination* at 21-23. Thus, Commerce was able to tie the production documentation from Shelter Forest's March 8 submission to the documentation Commerce relied on in finding that Shelter Forest had also sold CARB-labeled plywood with face and back veneers of radiata pine. *Id.*

Based on this evidence, Commerce determined that Shelter Forest's E0 glue that it used in its 2012 production of CARB-certified, radiata pine plywood was made of majority urea formaldehyde. *Remand Redetermination* at 21-24. Therefore, Commerce concluded that Shelter Forest produced inquiry merchandise prior to December 8, 2016. *Remand Redetermination* at 22-23. Because inquiry merchandise was commercially available prior to the initiation of the investigations, Commerce concluded that inquiry merchandise was not later-developed

11

merchandise  pursuant to 19 U.S.C. § 1667j(d).  *Id*.  Thus, Commerce reversed its affirmative anticircumvention  determination.

First, the Coalition  contends that there is information  missing  from the record regarding the inclusion  of melamine  in Shelter Forest's E0 glue.  It argues that the relevant sales of plywood that Shelter Forest identified  as being  produced with its suppliers'  E0 glue recipe were made with a water-boil proof glue, and that a urea-formaldehyde  resin cannot qualify  as a water-boil proof glue without melamine.  Coalition  Cmts. at 9-10.  The Coalition  asserts that there is a "gap" in the record because the glue recipe provided by Shelter Forest and the production documents  do not reference melamine,  the ingredient  which turns a majority  urea formaldehyde glue into a water-boil proof rated glue.  Coalition  Cmts. at 8-10.  Therefore, they contend the glue referenced in that documentation  cannot be the water-boil proof rated glue referenced in Shelter Forest's sales documentation.  *Id*.

Despite the Coalition's  obfuscation of the issue, the Court remanded for Commerce to determine whether Shelter Forest's new factual information  demonstrates that the E0 glue it uses in production  of its plywood  is majority  urea formaldehyde, not whether the glue was water-boil proof rated.  For that purpose, Commerce requested that Shelter Forest provide the new factual information  that Commerce had previously  rejected.  *See* Commerce's Letter, "Information Request," dated March 5, 2021 P.R.R 1.  Shelter Forest filed its March 8 submission  to "demonstrat{e},unequivocally,  that the 'E0' glue identified  in Shelter Forest's specification sheet for SKU 575879… was comprised  of urea formaldehyde,"  the only glue criterion  relevant to the determination  of whether the plywood  products  in question  were later-developed merchandise.  *See* Shelter Forest's March 8 submission  at 2.  Therefore, to the extent that Shelter Forest's initial  submissions  do not address how melamine  was used in its production  process,

that is consistent with the purpose of the submission.  "Shelter Forest did not characterize the documentation it provided as a complete set of production documents created in the production of inquiry merchandise." *Remand Redetermination* at 26.

However, Commerce, in fact, asked Shelter Forest to explain why its documentation did not reference melamine, if the plywood was indeed water-boil proof rated.  Shelter Forest explained that "{s}uch E0 production recipe documentation only concerned the chemical components of the specific E0 glue and did not purport to address all components used in the entire plywood production process."  Shelter Forest's Letter, "Shelter Forest's Rebuttal Factual Information," dated April 5, 2021 (Shelter Forest's April 5 Rebuttal Factual Information), P.R.R. 37, C.R.R. 14, at 2.  Shelter Forest further explained that a small amount of melamine was added to the E0 glue after the glue mixture was produced, during the glue-spreading operation.  *Id*. Shelter Forest provided evidence to support its assertion, including an excerpt from its 2011 quality control production manual.  This manual demonstrated that, although melamine was not part of Shelter Forest's underlying glue recipe, it was added after the urea-formaldehyde glue was produced.  *See* Shelter Forest's March 25 Suppl. Questionnaire Resp. at Exhibit 1, Attachment A, P.R.R. 30, C.R.R. 12.

 Commerce determined that additional sales documentation indicated that Shelter Forest had radiata pine plywood that was made with an E0 glue that was melamine fortified.  *See* Shelter Forest's Letter, "Comment on Certain U.S. Producers' Request for Anticircumvention Inquiry," dated July 16, 2018 at Exhibit 1, Attachments D and G, P.R. 37-39; C.R. 28-31; *see also* Shelter Forest's Letter, "Shelter Forest Quantity and Value Questionnaire Response," dated October 11, 2018 (Shelter Forest's Q&V Response) at Exhibit 1, Attachment E, P.R. 115-116, C.R. 76-77.  Specifically, purchase orders show that Shelter Forest's customer requested a "WBP

(water-boil proof) rated glue,"[2] and an internal spreadsheet that tracks all of Shelter Forest's

plywood purchases indicates that it purchased plywood made with a "WBP rated glue." *See*

Shelter Forest's March 8 Submission at Exhibit 1, Attachment F. Further, Shelter Forest

provided the specification sheet for SKU number 575879, which shows that this SKU was made

of plywood with E0 (melamine fortified) glue, and the documentation for SKU number 575879

provided in Shelter Forest's Comments on Initiation ties to Shelter Forest's Q&V Response and

the documents provided for two supplier contracts in Shelter Forest's March 8 submission. *See*

Shelter Forest's Comments on Initiation at Exhibit 1, Attachment D; *see also* Shelter Forest's

March 8 submission at Exhibit 1, Attachments C and D.

Based on this evidence, Commerce determined that even though Shelter Forest's glue

recipe did not reference melamine, there was no "gap" in the record because record evidence

supported Shelter Forest's explanation that its majority urea formaldehyde glue was fortified

with melamine, and tied to the relevant sales documentation. *Remand Redetermination* at 26-27;

*see* Shelter Forest's March 8 submission at Exhibit 1, Attachments B-E; *see also* Shelter Forest's

March 25 supplemental questionnaire response. Thus, in accordance with the Court's remand

order, Commerce reasonably relied on Shelter Forest's new factual information to determine that

Shelter Forest's glue was composed of majority urea formaldehyde.

Second, the Coalition argues that information in Shelter Forest's 2012 public catalog

contradicts Shelter Forest's glue information in its March 8 submission and March 25

supplemental questionnaire responses. Coalition Cmts. at 13. Page 33 of the catalog discusses

the glue options for one brand of Shelter Forest's plywood (the brand of plywood that appears in

Shelter Forest's sales documents). *See* Coalition's Letter, "Rebuttal Comments" dated July 30,

---

[2] *See* Shelter Forest's March 25 supplemental questionnaire response at Exhibit 1, Attachment D.

2018 at Exhibit 7. The glue options include "FPR (fortified performance resin)," "eZERO," and "eONE." *Id*. On the top half of this page, FPR glue is identified as waterproof ("2 hour boil"), although the E0 glue is identified as not waterproof. *Id*. On the bottom half of the page, phenol formaldehyde and resorcinol formaldehyde are labeled as FPRs (*i.e.*, waterproof "2 hour boil"), although melamine-urea formaldehyde is identified as E0 (*i.e.*, not waterproof). *Id*. The Coalition asserts that Shelter Forest's melamine-urea formaldehyde glue should have been identified as having a water-boil proof rating in the 2012 plywood catalog. Coalition Cmts. at 13. The Coalition further argues that because the glue was not identified as such, there is a question as to the veracity of Shelter Forest's March 8 submission and March 25 supplemental questionnaire response. The Coalition claims Commerce ignored this evidence in the 2012 plywood catalog, which detracted from Commerce's conclusion. Coalition Cmts. at 13.

Commerce did not ignore this evidence. Instead, Commerce examined this evidence in context of the record as a whole. As Commerce explained, it is undisputed that Shelter Forest's 2012 public plywood catalog "does not contain a definite description of Shelter Forest's products." *Remand Redetermination* at 29 (emphasis added). For example, even though the 2012 public plywood catalog did not mention radiata pine species as one of Shelter Forest's veneer options,[3] Commerce found that Shelter Forest sold plywood with radiata pine veneers in 2012. *See* "Business Proprietary Information Memo for Preliminary Determination Memorandum," (June 4, 2019) (Preliminary BPI Memo), C.R. 133, at 7, unchanged in final; *see also* Preliminary Determination Memorandum at 13, P.R. 166. In other words, Commerce found that the more specific sales and supplier documentation provided by Shelter Forest was sufficient to determine that Shelter Forest sold plywood with radiata pine veneers, despite any apparent

---

[3] *See* Coalition's Letter, "Rebuttal Comments" dated July 30, 2018, P.R. 50 at 22 and Exhibit 7, page 15.

inconsistencies between those documents and the generic 2012 catalog. This determination was not disputed by parties in the final determination, challenged by any party before the Court, or remanded to Commerce. Similarly, when examining the relevant record evidence on remand, Commerce determined that the 2012 public plywood catalog was less probative than the specific sales and production documentation that Shelter Forest provided in its March 8 submission. *Remand Redetermination* at 26-29. The March 8 submission tied to the documentation Commerce relied on in finding that Shelter Forest had sold CARB-labeled plywood with face and back veneers of radiata pine, and thus was more probative to the issue at the heart of this case: whether Shelter Forest sold inquiry merchandise prior to the initiation of the investigations. *Remand Redetermination* at 26.

Further, the Coalition's challenge ignores Shelter Forest's explanation for why its 2012 public catalog would not have labeled Shelter Forest's urea formaldehyde resin as having a water-boil proof rating or weigh that evidence differently. Specifically, the Coalition ignores Shelter Forest's explanation that in 2012, the addition of melamine to urea-formaldehyde resin was new and considered a "trade secret," and thus would not have been included in a public catalog. *See* Shelter Forest's March 25 SQR at 4. The Coalition also ignores or seeks to reweigh other record evidence, including Mr. Loe's declaration, in which he explained that Shelter Forest released this public catalog during an "evolutionary time with new standards set by CARB to lower the emotions {sic} of Formaldehyde." Shelter Forest's April 5, Rebuttal Factual Information, P.R.R. 37, C.R.R. 14, at 2. He also explained that Shelter Forest's "catalogs and customer marketing materials referenced many resins/glues that the market was familiar with including ones that Shelter Forest did not use and {that were} not {made} available by Shelter." *Id*. Mr. Loe explained that the intent of the catalog was to "articulate {that} Shelter Forest was

introducing a new process that was improved, with a fortification and yet still met the requirements for being CARB-certified." *Id.* at 3.

Thus, ultimately, Commerce determined that the public 2012 catalog, which did not label Shelter Forest's urea formaldehyde glue as water-boil proof rated, did not detract from the other evidence on the record demonstrating that Shelter Forest used a majority urea formaldehyde glue. *Remand Redetermination* at 29. Commerce did not fail to consider the evidence, *see* Coalition Cmts. at 7-8, but instead explained how it concluded that Shelter Forest's E0 glue was a majority urea formaldehyde glue. *Remand Redetermination* at 29. Commerce has "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). That is all that is required.

Commerce's conclusion is based upon the sworn declaration provided by Shelter Forest, as well as the sales and production documentation the company provided. The Coalition has failed to demonstrate that Commerce's determination lacks "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *CP Kelco U.S., Inc. v. United States*, 949 F.3d 1348, 1356 (Fed. Cir. 2020). "Commerce's findings 'may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.'" *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308–09 (Fed. Cir. 2020) (citation omitted). The Court should uphold Commerce's negative circumvention determination as supported by substantial evidence.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General


JEANNE E. DAVIDSON
Director


s/Tara K. Hogan
TARA K. HOGAN
Assistant Director


OF COUNSEL:                                    s/Sonia M. Orfield
Savannah Rose Maxwell                          SONIA M. ORFIELD
Attorney                                       Trial Attorney
U.S. Department of Commerce                     U.S. Department of Justice
Office of the Chief Counsel For Trade          Civil Division
    Enforcement and Compliance         Commercial Litigation Branch
1401 Constitution Avenue, NW                   P.O. Box 480
Washington, D.C. 20230                         Ben Franklin Station
Tel: (202) 482-3748                            Washington D.C. 20044
Fax: (202) 482-4912                            Tel: (202) 353-0534
Email: Savannah.Maxwell@trade.gov             Fax: (202) 514-7965
                                               Email: Sonia.M.Orfield@usdoj.gov


June 16, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the brief, Defendant's Response To Comments On Remand Redetermination,  complies with the word-count limitation.   In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief.  According to the word count, the brief contains 4903 words.

<u>/s/ Sonia  Orfield</u>
June 16, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD.<br><br>                    Plaintiff,<br><br>        and<br><br>SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,*<br><br>                Consolidated  Plaintiffs,<br><br>        v.<br><br>UNITED STATES,<br><br>                Defendant,<br><br>        and<br><br>THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>                Defendant-Intervenor.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Consol. Court No. 18-00002 |

## <u>ORDER</u>

Upon consideration  of final results of remand, *Final Results of Remand Pursuant to Court Remand,* May 10, 2021 (*Remand Redetermination*), ECF No. 81; the comments filed by Defendant-intervenor,  the Coalition  in Fair Trade in Hardwood Plywood (Coalition),  *see* Coalition  Cmts., June 4, 2021, ECF No. 85; the comments filed by consolidated  plaintiff-intervenors Taraca Pacific, Inc., *et al.* (Taraca), *see* Taraca Cmts., June 4, 2021, ECF No. 84; the comments filed by plaintiff  Shelter Forest, *et al*., Shelter Cmts., June 4, 2021, ECF No. 83; and Defendant's Response to Comments on Remand Results; the administrative  record and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's Remand Results are sustained in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____

JUDGE

Dated: _____